# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF TEXAS
### WACO DIVISION

| | | |
|---|---|---|
| TRUSUN TECHNOLOGIES, LLC D/B/A | § | |
| TRUSOLIS TECHNOLOGIES; | § | |
| THE JOHNSTON FAMILY TRUST; AND | § | |
| JOHN F. JOHNSTON, | § | |
| | § | |
| **Plaintiffs,** | § | |
| v. | § | **Case No. 6:19-cv-00656-ADA** |
| | § | |
| EATON CORPORATION; AND | § | |
| COOPER LIGHTING, LLC, | § | |
| | § | **JURY TRIAL DEMANDED** |
| **Defendants.** | § | |

## ORIGINAL COMPLAINT

Plaintiffs TruSun Technologies, LLC d/b/a TruSolis Technologies ("TruSolis"), the

Johnston Family Trust ("JFT"), and John F. Johnston ("Johnston") (collectively "Plaintiffs") file

this complaint against Defendants Eaton Corporation ("Eaton") and Cooper Lighting, LLC

("Cooper") (collectively, "Defendants"), and state as follows:

## NATURE OF THE ACTION

1.      This is a civil action for patent infringement of U.S. Patent No. 8,188,685 ("the

TruSolis Patent-in-Suit" or "the '685 Patent") arising under the patent laws of the United States,

35 U.S.C. §§ 271, *et seq.*; for correction of inventorship of U.S. Patent Nos. 9,657,930; 10,051,709;

10,085,317;   10,098,201;   10,143,053;   10,161,577;   10,161,619;   10,201,057;   10,251,225;

9,188,307;  9,189,996;  9,730,302;  9,759,418;  9,800,431;  9,857,066;  9,888,545;  9,736,904;  and

9,408,271 (collectively, "the Eaton Patents-In-Suit") arising under the patent laws of the United

States, 35 U.S.C. § 256; for misappropriation of trade secrets under the Defend Trade Secrets Act,

18 U.S.C. § 1836, *et seq.*, the Texas Uniform Trade Secrets Act, TEX. CIV. PRAC. & REM. CODE

ANN. § 134A.002, and Texas Common Law; and for related claims for unjust enrichment and money had and received.

## THE PARTIES

2.      Plaintiff TruSolis is a Texas LLC with its principal place of business at 248 Addie Roy Road, Suite B-204, Austin, Texas 78746.

3.      Plaintiff JFT has a mailing address at 1 Hunter St., Ground Floor, Ontario, Canada L8N3W1.

4.      Plaintiff Johnston is an individual residing in Carmel, California.

5.      Upon information and belief, Defendant Eaton is a corporation organized and existing under the laws of Ohio, with a place of business at 1000 Eaton Boulevard Cleveland, OH 44122. Eaton has a registered agent at CT Corp System, 1999 Bryan St., Ste. 900, Dallas, TX 75201-3136.

6.      Upon information and belief, Defendant Cooper is a Delaware corporation and is a wholly-owned subsidiary of Eaton, with a place of business at 600 Travis Street, Suite 5600, Houston, Texas 77002-2909. Cooper has a registered agent at CT Corp System, 1999 Bryan St., Ste. 900, Dallas, TX 75201-3136.

## JURISDICTION AND VENUE

7.      This Court has original subject matter jurisdiction over Plaintiffs' claims for patent infringement and correction of inventorship pursuant to the Federal Patent Act, 35 U.S.C. § 101, *et seq.*, and 28 U.S.C. §§ 1331 and 1338(a). This Court has original subject matter jurisdiction over Johnston's federal trade secret claim pursuant to 18 U.S.C. §§ 1836-39, *et seq.*, ("Defend Trade Secrets Act") and 28 U.S.C. §§ 1331 and 1343. This Court also has supplemental jurisdiction over the state law claims pursuant to 28 U.S.C. § 1367.

8.      On information and belief, Defendants are subject to this Court's specific personal jurisdiction pursuant to due process and/or the Texas Long Arm Statute, due at least to their substantial business in this forum, including: (i) at least a portion of the infringements alleged herein; and (ii) regularly doing or soliciting business, engaging in other persistent courses of conduct, and/or deriving substantial revenue from goods and services provided to customers located in Texas and in this Judicial District. For example, on July 27, 2018, the Heartland Conference (headquartered in Waco, Texas) and Eaton published a press release that began:

> "**WACO, Texas --** The Heartland Conference has agreed to a deal for Eaton's Ephesus Sports Lighting to become the official sports lighting provider for the conference Commissioner Tony Stigliano announced."

See Exhibit 1. As another example, on June 13, 2018, the Lonestar Conference and Eaton published a press release that began:

> "The Lone Star Conference has named Eaton's Ephesus Sports Lighting as the official sports lighting provider of the league. The LSC and Ephesus have agreed to a multi-year deal."

See Exhibit 2. St. Edward's University in Austin, Texas, St. Mary's University in San Antonio, Texas, and the University of Texas of the Permian Basin in Odessa, Texas are all current members of the Lone Star Conference and are all located in this Judicial District.

9.      On information and belief, venue is proper in this District pursuant to 28 U.S.C. §§ 1391(b), 1391(c), 1391(d), and 1400(b) because Defendants have a regular and established place of business in this District, have transacted business in this District, and have committed acts of patent infringement in this District.

## THE TRUSOLIS PATENT-IN-SUIT

10.     On May 29, 2012, the TruSolis Patent-in-Suit, U.S. Patent No. 8,188,685, entitled "Light-Generating System," was duly and legally issued to Johnston and subsequently transferred to, and is currently owned by, The Johnston Family Trust. TruSolis holds an exclusive license to

the TruSolis Patent-in-Suit and, as such, has the right to sue and recover for infringement of the TruSolis Patent-in-Suit. A copy of the TruSolis Patent-in-Suit is attached as Exhibit 3.

### THE EATON PATENTS-IN-SUIT

11.     U.S. Patent No. 9,657,930 ("the '930 Patent") is entitled "High Intensity Light-Emitting Diode Luminaire Assembly" and bears an issuance date of May 23, 2017. The '930 Patent lists Christopher Nolan, Joseph Casper, Joseph Witkowski, and Jonathan Hull as the inventors and Ephesus Lighting, Inc. as the sole assignee. USPTO assignment records identify Eaton Intelligent Power Limited (which, upon information belief, is a wholly-owned subsidiary of Eaton) as the current assignee of the patent. A true and correct copy of the '930 Patent is attached hereto as Exhibit 4.

12.     U.S. Patent No. 10,051,709 ("the '709 Patent") is entitled "Selectable Control for High Intensity LED Illumination System to Maintain Constant Color Temperature on a Lit Surface" and bears an issuance date of August 14, 2018. The '709 Patent lists Joseph Casper, Christopher Nolan, Jeff Shuster, and Brian Wilson as the inventors and Eaton Intelligent Power Limited as the sole assignee. USPTO assignment records identify Eaton Intelligent Power Limited as the current assignee of the patent. A true and correct copy of the '709 Patent is attached hereto as Exhibit 5.

13.     U.S. Patent No. 10,085,317 ("the '317 Patent") is entitled "Control System for Lighting Devices" and bears an issuance date of September 25, 2018. The '317 Patent lists Daniel Foster, Joseph Casper, Christopher Nolan, Benjamin Vollmer, Alexander Orisyuk, and George Dederich as the inventors and Cooper Lighting, LLC as the sole assignee. USPTO assignment records identify Eaton Intelligent Power Limited as the current assignee of the patent. A true and correct copy of the '317 Patent is attached hereto as Exhibit 6.

14.     U.S. Patent No. 10,098,201 ("the '201 Patent") is entitled "Method and System for Controlling Functionality of Lighting Devices from a Portable Electronic Device" and bears an issuance date of October 9, 2018. The '201 Patent lists Brian Wilson, Joseph Casper, and Christopher Nolan as the inventors and Cooper Lighting, LLC as the sole assignee. USPTO assignment records identify Eaton Intelligent Power Limited as the current assignee of the patent. A true and correct copy of the '201 Patent is attached hereto as Exhibit 7.

15.     U.S. Patent No. 10,143,053 ("the '053 Patent") is entitled "Method and system for controlling functionality of lighting devices" and bears an issuance date of November 27, 2018. The '053 Patent lists Brian Wilson, Joseph Casper, and Christopher Nolan as the inventors and Cooper Lighting, LLC as the sole assignee. USPTO assignment records identify Eaton Intelligent Power Limited as the current assignee of the patent. A true and correct copy of the '053 Patent is attached hereto as Exhibit 8.

16.     U.S. Patent No. 10,161,577 ("the '577 Patent") is entitled "Electrical Connection of Control Circuit Card to Power Supply in LED Luminaire Assembly" and bears an issuance date of December 25, 2018. The '577 Patent lists Joseph Casper, Christopher Nolan, and Joseph Witkowski as the inventors and Eaton Intelligent Power Limited as the sole assignee. USPTO assignment records identify Eaton Intelligent Power Limited as the current assignee of the patent. A true and correct copy of the '577 Patent is attached hereto as Exhibit 9.

17.     U.S. Patent No. 10,161,619 ("the '619 Patent") is entitled "LED Illumination Device with Vent to Heat Sink" and bears an issuance date of December 25, 2018. The '619 Patent lists Joseph Casper, Christopher Nolan, and Walten Owens as the inventors and Eaton Intelligent Power Limited as the sole assignee. USPTO assignment records identify Eaton Intelligent Power

Limited as the current assignee of the patent. A true and correct copy of the '619 Patent is attached hereto as Exhibit 10.

18.     U.S. Patent No. 10,201,057 ("the '057 Patent") is entitled "Lighting Device LED Module with Effects for Beam Spread Tuning and Beam Shaping" and bears an issuance date of February 5, 2019. The '057 Patent lists Christopher Nolan, Joseph Casper, Benjamin Vollmer, and George Dederich as the inventors and Cooper Lighting, LLC as the sole assignee. USPTO assignment records identify Eaton Intelligent Power Limited as the current assignee of the patent. A true and correct copy of the '057 Patent is attached hereto as Exhibit 11.

19.     U.S. Patent No. 10,251,225 ("the '225 Patent") is entitled "Multi-mode Power Supply for an LED Illumination Device" and bears an issuance date of April 2, 2019. The '225 Patent lists Joseph Witkowski, Joseph Casper, Christopher Nolan, and Benjamin Vollmer as the inventors and Eaton Intelligent Power Limited as the sole assignee. USPTO assignment records identify Eaton Intelligent Power Limited as the current assignee of the patent. A true and correct copy of the '225 Patent is attached hereto as Exhibit 12.

20.     U.S. Patent No. 9,188,307 ("the '307 Patent") is entitled "High Intensity LED Illumination Device with Automated Sensor-based Control" and bears an issuance date of November 7, 2015. The '307 Patent lists Joseph Casper, Christopher Nolan, Joseph Witkowski, Jeff Shuster, and Brian Wilson as the inventors and Ephesus Lighting, Inc. as the sole assignee. USPTO assignment records identify Eaton Intelligent Power Limited as the current assignee of the patent. A true and correct copy of the '307 Patent is attached hereto as Exhibit 13.

21.     U.S. Patent No. 9,189,996 ("the '996 Patent") is entitled "Selectable, zone-based control for high intensity LED illumination system" and bears an issuance date of November 17, 2015. The '996 Patent lists Joseph Casper, Christopher Nolan, Joseph Witkowski, Jeff Shuster,

and Brian Wilson as the inventors and Ephesus Lighting, Inc. as the sole assignee. USPTO assignment records identify Eaton Intelligent Power Limited as the current assignee of the patent. A true and correct copy of the '996 Patent is attached hereto as Exhibit 14.

22.     U.S. Patent No. 9,730,302 ("the '302 Patent") is entitled "System and Method for Control of an Illumination Device" and bears an issuance date of August 8, 2017. The '302 Patent lists Benjamin Vollmer, George Dederich, Christopher Nolan, Joseph Casper, and Joseph Witkowski as the inventors and Ephesus Lighting, Inc. as the sole assignee. USPTO assignment records identify Eaton Intelligent Power Limited as the current assignee of the patent. A true and correct copy of the '302 Patent is attached hereto as Exhibit 15.

23.     U.S. Patent No. 9,759,418 ("the '418 Patent") is entitled "Optical Lens Structures for Light Emitting Diode (LED) Array" and bears an issuance date of September 12, 2017. The '418 Patent lists Christopher Nolan, Joseph Casper, and Walten Owens as the inventors and Ephesus Lighting, Inc. as the sole assignee. USPTO assignment records identify Eaton Intelligent Power Limited as the current assignee of the patent. A true and correct copy of the '418 Patent is attached hereto as Exhibit 16.

24.     U.S. Patent No. 9,800,431 ("the '431 Patent") is entitled "Controllers for Interconnected Lighting Devices" and bears an issuance date of October 24, 2017. The '431 Patent lists Benjamin Vollmer, Alexander Orisyuk, Christopher Nolan, George Dederich, and Joseph Casper as the inventors and Ephesus Lighting, Inc. as the sole assignee. USPTO assignment records identify Eaton Intelligent Power Limited as the current assignee of the patent. A true and correct copy of the '431 Patent is attached hereto as Exhibit 17.

25.     U.S. Patent No. 9,857,066 ("the '066 Patent") is entitled "LED Illumination Device with Single Pressure Cavity" and bears an issuance date of January 2, 2018. The '066 Patent lists

Walten Owens, Christopher Nolan, and Joseph Casper as the inventors and Ephesus Lighting, Inc. as the sole assignee. USPTO assignment records identify Eaton Intelligent Power Limited as the current assignee of the patent. A true and correct copy of the '066 Patent is attached hereto as Exhibit 18.

26.     U.S. Patent No. 9,888,545 ("the '545 Patent") is entitled "High Intensity LED Illumination Device" and bears an issuance date of February 6, 2018. The '545 Patent lists Joseph Casper, Christopher Nolan, Joseph Witkowski, Jeff Shuster, and Brian Wilson as the inventors and Ephesus Lighting, Inc. as the sole assignee. USPTO assignment records identify Eaton Intelligent Power Limited as the current assignee of the patent. A true and correct copy of the '545 Patent is attached hereto as Exhibit 19.

27.     U.S. Patent No. 9,736,904 ("the '904 Patent") is entitled "Selectable, Zone-based Control for High Intensity LED Illumination System" and bears an issuance date of August 15, 2017. The '904 Patent lists Joseph Casper, Christopher Nolan, Joseph Witkowski, Jeff Shuster, and Brian Wilson as the inventors and Ephesus Lighting, Inc. as the sole assignee. USPTO assignment records identify Eaton Intelligent Power Limited as the current assignee of the patent. A true and correct copy of the '904 Patent is attached hereto as Exhibit 20.

28.     U.S. Patent No. 9,408,271 ("the '271 Patent") is entitled "High Intensity LED Illumination Device with Automated Sensor-based Control" and bears an issuance date of August 2, 2016. The '271 Patent lists Joseph Casper, Christopher Nolan, Joseph Witkowski, Jeff Shuster, and Brian Wilson as the inventors and Ephesus Lighting, Inc. as the sole assignee. USPTO assignment records identify Eaton Intelligent Power Limited as the current assignee of the patent. A true and correct copy of the '271 Patent is attached hereto as Exhibit 21.

29.     As set forth herein, the inventors listed on the Eaton Patents-in-Suit learned one or more of the inventive aspects of one or more claims in each of the Eaton Patents-in-Suit from Johnston. Accordingly, Johnston is either the sole inventor or a co-inventor of each of the Eaton Patents-in-Suit. By way of assignment, JFT owns Johnston's rights in the Eaton Patents-in-Suit and therefore has standing to bring the inventorship correction claims set forth herein. TruSolis holds an exclusive license to JFT's rights in the Eaton Patents-in-Suit and, as such, has standing to bring the inventorship correction claims set forth herein.

## FACTUAL BACKGROUND

### *Johnston Develops His LED Technology*

30.     In early 2008, Johnston began to design an innovative light emitting diode (LED) light fixture that could replace the more expensive, energy-intensive 400-watt metal halide fixtures that were found in most factories, warehouses, gymnasiums, and hockey arenas in Canada. His first 400-watt equivalent LED light design was made up of heat pipes, fans, computer power supplies, and a large salad bowl.

31.     After refining his innovative design over the course of 2008 and early 2009 to address temperature management and cooling issues, Johnston filed a U.S. provisional patent application on June 10, 2009, for an LED light system that, in some embodiments, utilizes pulse width management and constant current to aid in temperature management and cooling. On June 10, 2010, Johnston filed a U.S. non-provisional patent application, claiming priority to the U.S. provisional patent application. The non-provisional application later issued as the '685 Patent (the TruSolis Patent-in-Suit) on May 29, 2012.

32.     In August 2010, Johnston, operating through his then-company ProTerra LED International Inc. ("ProTerra"), successfully installed the first LED lighting system based on the technology contained in the '685 Patent into a warehouse in Markham, Ontario, Canada.

### *Johnston Meets Joe Casper and Ephesus Technologies*

33.     In January 2011, ProTerra and Johnston entered the U.S. market and set up an engineering and sales office at the Syracuse Tech Garden in Syracuse, New York.

34.     On March 1, 2011, an individual named Joseph "Joe" Casper ("Casper"), then operating a company called Ephesus Technologies, LLC ("Ephesus Technologies") out of the Syracuse Tech Garden, initiated contact with Johnston in an effort to pitch Ephesus Technologies' purported nanotech products as potentially compatible with Johnston's LED lighting system:

| | |
|---|---|
| **From:** | Joe Casper <joecasper@ephesustech.com> |
| **Sent:** | Tuesday, March 1, 2011 12:22 PM |
| **To:** | jjohnston@proterraled.com |
| **Subject:** | Syracuse Tech Garden Neighbor |

Hello John

      I would like to welcome you to the Syracuse Technology Garden.  Looks like we are neighbors.   I would like to meet and talk with you sometime about a few ventures we have been working on with NYS Universities and small businesses.  We have identified a method/process of incorporating graphene into a flexible roll-2-roll technology that exhibits unique optical properties, potential for large scale LED lighting.

      I would like to share with you not only this opportunities but other development efforts and understand a little more about your company.  There may be some common interest of opportunity we could exploit.  Please let me know if you have a few minutes to talk.

Thank you and regards,
Joe

Joe Casper
President and CEO

**Ephesus**
Technologies, LLC

Syracuse Technology Garden
235 Harrison Street
Syracuse, NY  13202
www.ephesustech.com
Office: (315) 474-0912
Cell:   (315) 720-4727

The email is attached as Exhibit 22.

35.     In response to Casper's solicitation, Johnston agreed to meet with Ephesus Technologies' representatives.

36.     Prior to Casper reaching out to and meeting with Johnston in 2011, Ephesus Technologies dealt with nanotechnology and was not involved in any way with LED lighting products or technology.

### *Ephesus Technologies Solicits and Obtains Johnston's Confidential Information Under NDA*

37.     On March 11, 2011, Casper again emailed Johnston and expressed interest in "exploring with you how we can collaborate to leverage you're [sic] lighting technology expertise and our nanotechnology electronics expertise to explore various opportunities and problems we are trying to solve":

| From: | Joe Casper <joecasper@ephesustech.com> |
|---|---|
| Sent: | Friday, March 11, 2011 11:26 AM |
| To: | John Johnston |
| Subject: | University and Electronics |

Hi John

It was a pleasure meeting with you yesterday.  I wish we had more time to further our discussion on our projects we both are exploring…being just down the hallway will be great.

I am interested in exploring with you how we can collaborate to leverage you're lighting technology expertise and our nanotechnology electronics expertise to explore various opportunities and problems we are trying to solve.

I would like to share with you in more depth our flexible graphene project at Binghamton University for electronics and LED lighting applications.  Also, share with you our board manufacture partner here in Syracuse and relationship with Clarkson University.

Joe


Joe Casper
President and CEO

The email is attached as Exhibit 23.

38.     Subsequently over the course of March 2011, Casper initiated multiple meetings with Johnston, during which time Casper expressed interest in Johnston's LED technology. Casper offered to help Johnston establish manufacturing for Johnston and ProTerra's LED products in New York State using Ansen Corporation, a company based in Ogdensburg, New York that had an established relationship with Casper and his company Ephesus Technologies.

39.     In furtherance of these discussions and in a prudent effort to protect his proprietary information, Johnston proposed that ProTerra and Ephesus Technologies enter into a Non-Disclosure Agreement ("NDA") so that any of Johnston's confidential and proprietary information shared with Casper and Ephesus Technologies would be protected. On March 15, 2011, Johnston sent Casper a draft NDA, and Casper replied that same day that he saw "no issues" with the NDA and would sign it. Casper also stated that "The Ephesus Team would enjoy being involved working with the ProTerra Team":

| From: | Joe Casper <joecasper@ephesustech.com> |
|---|---|
| Sent: | Tuesday, March 15, 2011 3:21 PM |
| To: | John Johnston |
| Subject: | Re: University and Electronics |

John

I have reviewed the NDA and see no issues. I will sign and drop off in your mail slot here at the Tech Garden.

I have been working with Clarkson University for several years, both from my previous years at Lockheed Martin and now Ephesus. They are a great bunch of folks to work with. I need to hook you up with the Clarkson University CAMP Team and a few of the professors we have been working with.

The Ephesus Team would enjoy being involved working with the ProTerra Team. I would like for you to meet two of our senior research scientist and discuss potential opportunities efforts. I will also like to share with you how we could pull in university resources to meet the development objectives.

I will block out April 1st for us to meet. I will also set up a meeting with Cspeed that afternoon (Cspeed is also works with Clarkson University/Greg Slack).

Joe

Joe Casper
President and CEO

The email string is attached as Exhibit 24.

40.     On April 1, 2011, Casper signed the NDA on behalf of Ephesus Technologies, in which Ephesus Technologies agreed not to disclose or misuse, and not allow its employees or affiliates to disclose or misuse, any confidential information provided to it by Johnston and ProTerra. The signed NDA is attached as Exhibit 25.

41.     On April 4, 2011, after confirming to Johnston in an email that he had signed the requested NDA, Casper asked Johnston to share with him and Ephesus Technologies information on the "pulse modulator" portion of Johnston's LED technology:

| | |
|---|---|
| **From:** | Joe Casper <joecasper@ephesustech.com> |
| **Sent:** | Monday, April 4, 2011 12:09 PM |
| **To:** | John Johnston |
| **Subject:** | NDA |

Hello John

I though we had a great meeting last Friday.  Our team is excited about the opportunities and we are looking forward working with ProTerra team.  Any information you can pass along in advance our our next meeting for the pulse modulator, that would be helpful.

I forgot to sign the NDA and have since signed.  I will place into your mail box.

What days did you say we could meet?

Thank again!
Joe


Joe Casper
President and CEO



Syracuse Technology Garden
235 Harrison Street
Syracuse, NY  13202
www.ephesustech.com
Office: (315) 474-0912
Cell:    (315) 720-4727

The email is attached as Exhibit 26. This would be the first of many times that Casper and others at Ephesus Technologies would ask for and receive from Johnston and his team at ProTerra confidential and proprietary technical information about Johnston's LED technology.

42.     That same day, Brian Abbe ("Abbe"), the VP and CTO for Ephesus Technologies, sent another email to Johnston requesting "the schematics and documentation" for additional aspects of Johnston's LED technology, specifically "the Linear Tech power supply and your controller." The email is attached as Exhibit 27.

43.     On April 14, 2011, Johnston provided the requested schematics to Abbe under the NDA. The email string is attached as Exhibit 28.

44.     Over the next several weeks of April and May 2011, Johnston and Casper discussed forming a joint venture between ProTerra and Ephesus Technologies to further commercialize Johnston's LED technology. Email strings from April 27-28, 2011, and May 3, 2011, in which the proposed joint venture is discussed between Johnston and Casper, are attached as Exhibits 29 and 30.

45.     On May 7, 2011, Abbe requested that Johnston provide him with additional confidential technical documents, including a confidential bill of materials ("BOM"), for Johnston's innovative and proprietary LED technology:

| | |
|---|---|
| From: | Brian Abbe <brianabbe@ephesustech.com> |
| Sent: | Saturday, May 7, 2011 9:12 AM |
| To: | John Johnston |
| Cc: | 'Joe Casper' |
| Subject: | Re: |

John,

thanks for the info.  We are working on it to find ways to lower costs.

I still need the BOM, drawings and gerbers for the LED array in order to get costing.

Thanks!

great news on the orders!!!!

Brian

The email string is attached as Exhibit 31.

46.     On May 11, 2011, Abbe requested that Johnston provide him with a sample of a lighting product that embodied Johnston's innovative and proprietary LED technology, along with additional confidential technical drawings for Johnston's LED technology:

From: Brian Abbe [mailto:brianabbe@ephesustech.com]
Sent: May-11-11 4:45 PM
To: John Johnston; Radu Goia
Cc: Joe Casper
Subject: panel light lense sample

John,

I need the panel light lens sample to show to a potential manufacturer.  Do you have it?  (maybe Joe put it away somewhere).

Radu, can you get me a drawing for the lens used on the fluorescent replacement lights?

I'm meeting with the manufacturer this Friday.  Sorry for the late requests but I need the info by then.

thanks,
Brian.


**Brian Abbe**
VP and CTO

Operating in good faith under the terms of the NDA, ProTerra engineer Radu Goia ("Goia") provided the drawing later that day. The email string is attached as Exhibit 32.

47.     On May 12, 2011, Ephesus Technologies engineer Jonathan Hull ("Hull") requested that Goia provide him additional confidential and proprietary schematics and documentation for Johnston's LED technology:

> **From:** Jonathan R. Hull [mailto:jonhull@ephesustech.com]
> **Sent:** May-12-11 10:34 AM
> **To:** 'Radu Goia'
> **Cc:** brianabbe@ephesustech.com
> **Subject:** Question on 122W driver design
>
> Radu,
>
> I received the 50W BOM and Schematic from Brian Abbe. I noticed the 122W inventory list has different parts than the 50W. Therefore, do you have a schematic and gerber files or the 122W? We cannot move forward with the build without knowing what parts go where on the board given these differences.
>
> Thanks,

Operating in good faith under the terms of the NDA, Goia provided the requested documents later that day. The email string is attached as Exhibit 33.

48.     On May 15, 2011, Hull requested an additional confidential and proprietary ProTerra component sample. The email is attached as Exhibit 34.

49.     On May 16, 2011, Casper requested that Johnston provide him with samples of the LED lighting products that Johnston and ProTerra had developed in commercializing Johnston's LED technology:

> **From:**        Joe Casper <joecasper@ephesustech.com>
> **Sent:**        Monday, May 16, 2011 5:03 PM
> **To:**          John Johnston
> **Cc:**          Brian Abbe
> **Subject:**     LED Lighting Products
>
> John, could you bring down and leave behind a few of the lighting products when you visit this week? It would be a big help.... Joe

The email is attached as Exhibit 35.

50.     In response to Casper's request and in reliance on the NDA, Johnston provided him with samples of ProTerra's complete line of proprietary products under the NDA, including a high-wattage bay light which contained the technology set forth in Johnston's non-public U.S. non-provisional patent application that would later issue as the '685 Patent (the TruSolis Patent-in-Suit). Other samples provided to Ephesus Technologies include a prototype of a hermetically sealed, waterproof high-wattage parking lot light. Notably, aspects of this product would later show up in Ephesus Technologies' patent applications.

51.     On May 19, 2011, Ephesus Technologies facilitated the publication of a press release announcing the "strategic alliance" between Ephesus Technologies, ProTerra, and Group4 Labs (a semiconductor company), which credited ProTerra as being "a world leading providers [sic] of solid state LED lighting solutions and high wattage LED":

> **About ProTerra LED**
> ProTerra LED is a world leading providers of solid state LED lighting solutions and high wattage LED. ProTerra designs and manufactures innovative products that will result in a greener planet and tremendous energy and financial savings plus.  It is a Canada-based company that has recently established an office in Syracuse.  ProTerra LED is led by CEO John Johnston.

 The press release drafted by Ephesus Technologies separately described Ephesus Technologies as a company "that creates innovative high tech products and applications using nanotechnology":

> **About Ephesus Technologies**
> Ephesus Technologies is a Syracuse-based company that creates innovative high tech products and applications using nanotechnology.  It identifies new technologies that have direct impact on the technology needs of commercial and government enterprises.  Ephesus currently employs seven senior research engineers working on the development of nanotechnologies and Intellectual Property. Ephesus Technologies is led by cofounders Joe Casper and Brian Abbe.

The press release is attached as Exhibit 36.

52.     On May 25, 2011, Abbe requested that Johnston and Goia provide him with additional confidential drawings and specifications for Johnston's LED technology:

> **From:** Brian Abbe [mailto:brianabbe@ephesustech.com]
> **Sent:** May-25-11 10:34 AM
> **To:** Radu Goia
> **Cc:** John Johnston; Jon R Hull
> **Subject:** specifications for the heat fins
>
> Radu,
>
> We talked today to a metal extrusion company and we'd like to get a quote from them for the heat fins on the bay lighting.  Can you send me the drawings and specs for those fins?
>
> John, I know you have quoted them with another NY company.  Can you get me the name of that company and the pricing?
>
> thanks,
> Brian.
>
> **Brian Abbe**
> VP and CTO

Goia, again in good faith reliance on the parties' NDA, provided the requested documents later that day. The email string is attached as Exhibit 37.

53.    On May 27, 2011, per their request, Goia sent Abbe and Hull some additional confidential technical files for ProTerra's products embodying Johnston's innovative and proprietary LED technology, including a layout of ProTerra's LED circuit board that contained Johnston's LED technology. The email is attached as Exhibit 38. A virtually identical layout would later show up in Ephesus Technologies' LED products and patent applications.

54.    On May 31, 2011, Casper sent Johnston an updated proposed "Agreement of Understanding" ("AOU") for "the establishment, formation, and operation of a joint venture [between Ephesus Technologies and ProTerra] to design, own, market, and sell LED lighting technology and solutions." Notably, the proposed AOU—which was drafted by counsel for Ephesus Technologies—described ProTerra as a company that "provies LED lighting solutions and is a pioneer in high wattage LED," whereas the agreement separately described Ephesus Technologies *not* as an LED company, but rather as a company whose "principal business is to

research, develop, discover, implement, market, sell and/or license new technologies for use in the defense, medical and energy industries":

> **Background:**
>
> Ephesus is a limited liability company, formed and organized under the laws of the State of New York and has its principal place of business at: Syracuse Technology Garden, 235 Harrison Street, Syracuse, NY 13202. Ephesus principal business is to research, develop, discover, implement, market, sell and/or license new technologies for use in the defense, medical and energy industries. Ephesus is owned, operated and managed by Joe Casper and Brian Abbe.
>
> ProTerra is corporation, incorporated under the laws of Canada, the Province of Ontario, and has its principal place of business at: Syracuse Technology Garden, 235 Harrison Street, Syracuse, NY 13202. ProTerra is the sole stockholder of ProTerra Lighting US Inc., a newly formed corporation, incorporated and organized under the laws of the State of New York. ProTerra provides LED lighting solutions and is a pioneer in high wattage LED. ProTerra designs and manufactures innovative products that transcend existing technologies for lighting commercial and residential spaces. John Johnston serves as ProTerra's Chief Executive Officer.

The email and proposed AOU are attached as Exhibit 39. ProTerra went on to sign the proposed AOU on June 3, 2011, and Ephesus Technologies signed it on June 6, 2011.

55.    On June 3, 2011, Abbe asked Johnston for a copy of ProTerra's confidential and proprietary business plan, which Johnston provided him under the NDA:

| | |
|---|---|
| **From:** | Brian Abbe <brianabbe@ephesustech.com> |
| **Sent:** | Friday, June 3, 2011 9:34 AM |
| **To:** | John Johnston |
| **Cc:** | 'Joe Casper' |
| **Subject:** | Re: |

John,

do you have this business plan in Word format? We want to edit/update for St. Lawrence County....

thanks,

**Brian Abbe**
VP and CTO



The email string is attached as Exhibit 40.

56.     Over the course of May, June, and July 2011, Johnston and ProTerra continued to provide Ephesus Technologies with samples of Johnston and ProTerra's lighting products and confidential technical information and documentation relating to the ProTerra products. As one limited example, on June 7, 2011, Goia provided Hull with fine detail on ProTerra's electronic LED circuitry and specifications. The email string is attached as Exhibit 41. As another example, on June 27, 2011, Casper requested from Johnston a copy of a confidential ProTerra Powerpoint presentation that contained technical details about Johnston's technology, information about ProTerra's products in development, and information about ProTerra's "strategic business model," which Johnston provided to Casper via email later that day under the NDA. The email string and PowerPoint presentation are attached as Exhibit 42. Troublingly, many of the same concepts and identical technical details from ProTerra's presentation would later appear in Ephesus Technologies' subsequently-created LED products and patent applications.

57.     During the continued discussions between ProTerra and Ephesus Technologies to form the joint venture entity that the parties eventually decided would be called "InnovatUS," Casper requested the specification and drawings from Johnston's then-non-public U.S. non-provisional patent application that would later result in the '685 Patent (the TruSolis Patent-in-Suit), which Johnston sent to him by email on June 29, 2011, accompanied by the patent application's filing receipt. The email string is attached as Exhibit 43. Much of the same content and identical concepts from Johnston's patent application would later show up in Ephesus Technologies' subsequently-created LED products and patent applications.

58.     On July 15, 2011, Casper sent an email to Shan Jamal, then-President of ProTerra, proposing that the joint venture between ProTerra and Ephesus Technologies be structured as an "'Asset Purchase' of ProTerra" by the new entity InnovatUS. The email is attached as Exhibit 44.

### *Ephesus Technologies Decides to Ditch Johnston and Proceeds to Build a Successful Business Using Johnston's Technology They Stole from Him*

59.     Just four days later, on July 19, 2011, Casper and Ephesus Technologies changed course and informed Johnston via email that Ephesus Technologies no longer wanted to partner with Johnston and ProTerra on the joint venture company InnovatUS. Instead, Casper stated that he and Ephesus Technologies wanted to turn InnovatUS into an "Energy Solutions Company" rather than a lighting products company (although, under Ephesus Technologies' new proposal, InnovatUS could supply ProTerra with certain components for ProTerra's LED lighting products):

| | |
|---|---|
| **From:** | Joe Casper <joecasper@ephesustech.com> |
| **Sent:** | Tuesday, July 19, 2011 9:53 AM |
| **To:** | jjohnston@proterraled.com |
| **Subject:** | **TALK** ** IMPORTANT ** InnovatUS Strategy Plans |

John,  3pm will not work for me and Brian, we have a meeting.   Can we talk at 11:30am?

I would like to discuss another option Brain and I have put together over the past week for ProTerra that would keep all companies intact until you have a clear objective of where you want to take ProTerra.  Also, gives ProTerra time to become cash positive.

InnovatUS would become a "Energy Solution Company" and we would help support ProTerra become profitable with our LED Devices, Super Graphene Capacitors, Wind Turbine, and Solar systems.

InnovatUS would get NY State, Federal, DoD, Lockheed Martin, SPEC support for R&D and manufacturing for our System Solution Products

This may be the best solution until you feel more comfortable.  We have build up some debt that you and I need to resolve before we engage into Innovatus.  I need to share with you this debt.

Okay to talk?  I do not want you to put a lot of work into a summary and we may shift gears.

Joe

The email is attached as Exhibit 45.

60.     On August 12, 2011, Casper sent Johnston an email updating Johnston on the current status of Ephesus and attaching a proposed agreement to "release both parties from the Agreement of Understanding":

| | |
|---|---|
| From: | Joe Casper <joecasper@ephesustech.com> |
| Sent: | Friday, August 12, 2011 6:05 AM |
| To: | John Johnston |
| Subject: | Agreement of Understanding |
| Attachments: | PastedGraphic-1.tiff; ATT00276.htm; Proterra MOU release doc.pdf; ATT00279.htm; image010.png; ATT00282.htm |

Hello John

I hope all is well with you and your adventures are moving forward as planned.   I can not believe how fast the summer has past as looking forward to my yearly pilgrimage to Montreal and Quebec in two weeks.

The Ephesus Team is doing well and the college interns are heading back to school next week.  We have been busy with our wind turbine program and Lockheed Martin is very excited.

An action item I would like to close out from our adventure is to release both parties from the Agreement of Understanding.  If you would please sign and return,  that would be great.

If you are in town sometime,  please call so we can grab lunch.

Cheers!
Joe

Joe Casper
President and CEO

The email and Casper's proposed release agreement are attached as Exhibit 45.5. Notably, in a clear attempt cover up Ephesus Technologies' true activities in working to commercialize Johnston's LED technology, Casper mentioned in the email that the "Ephesus Team" had been "busy with our wind turbine program and Lockheed Martin is very excited." Nowhere did Casper mention in that email that the Ephesus Team was continuing to work on commercializing Johnston's LED technology such that just four months later Ephesus Technologies would (a) file their first patent application directed to Johnston's LED technology and intentionally omit Johnston as an inventor, as described in further detail below, and (b) secure its first commercial

LED project: a project to retrofit fifteen streetlights in Baldswinville, New York with LED lighting fixtures, as described in further detail below.

61.    Despite being asked by Johnston and ProTerra numerous times following the split between the companies, Ephesus Technologies refused to return the confidential prototype lights they had acquired from Johnston and ProTerra under the NDA prior to the split. Ephesus Technologies' refusal to return Johnston and ProTerra's confidential information was particularly confusing in view of Casper's statement to Johnston via email on August 22, 2011 that Ephesus Technologies "stopped working on ProTerra LED Lighting products as of August 1st":

| From: | Joe Casper <joe.casper@ephesustech.com> |
|---|---|
| Sent: | Monday, August 22, 2011 4:17 PM |
| To: | John Johnston |
| Subject: | Re: Release Document |

John,  we stopped working on ProTerra LED Lighting products as of August 1st and your desire to pursue other business opportunities.

Please fee free to call anytime and we can discuss.

Joe

Joe Casper
President and CEO



Syracuse Technology Garden
235 Harrison Street
Syracuse, NY  13202
www.ephesustech.com
Office: (315) 474-0912
Cell:    (315) 720-4727

The email is attached as Exhibit 46. Casper's statement that the split between ProTerra and Ephesus Technologies was due to Johnston's "desire to pursue other business opportunities" was false, as evidenced by Casper's July 19th email immediately above.

62.    On August 28, 2011, Jamal (on behalf of ProTerra) sent Casper a revised version of the proposed release agreement Casper had sent Johnston on August 12th "to release both parties from the Agreement of Understanding." In the revised version sent by Jamal, ProTerra inserted the following provisions into Casper's August 12th draft:

> All ProTerra property provided to Ephesus and InnovatUS prior and during the course of this AOU, including but not limited to, light fixture samples, circuit boards, catalogs, parts, components, CAD and PDF drawings, Gerber files, BOMs, presentations, marketing material, any other equipment and items shall be returned to ProTerra, copies and originals, upon the signing of this release.  And any electronic copies shall be deleted and destroyed.
>
> Ephesus, InnovatUS, affiliate companies, successors and assigns hereby agrees that they upon execution of this release shall not participate today or in the future in the development, manufacture and selling of LED lighting products in whole or in part that had been introduced by ProTerra prior or during the course of this AOU.  These LED products include bay lights, office lights, down/pot lighting, water-resistant lighting, outdoor parking, security, sign and street lighting.

The email string and ProTerra's proposed release agreement are attached as Exhibit 46.5. Upon information and belief, Casper and Ephesus Technologies never executed ProTerra's proposed version of the release agreement, presumably because Casper and Ephesus Technologies had no intention of giving back to Johnston and ProTerra the LED product samples and confidential technical information and documents that Ephesus Technologies had lured from Johnston and Proterra under the NDA, nor did Casper and Ephesus Technologies have any intention of ceasing their ongoing work in the development, manufacture, and selling of LED lighting products that were based on Johnston's LED technology.

63.    Casper's false August 22nd statement that the split between ProTerra and Ephesus Technologies was due to Johnston's "desire to pursue other business opportunities" is further refuted by a number of subsequent email exchanges between the companies. One example is an email from Jamal (on behalf of ProTerra) to Casper on September 12, 2011, in which Jamal referenced "the damages you have caused to ProTerra in your 'undoing' of the JV/ InnovatUS":

| From: | Shan Jamal <sjamal@proterraled.com> |
|---|---|
| Sent: | Monday, September 12, 2011 8:31 AM |
| To: | 'Joe Casper' |
| Cc: | 'John Johnston' |
| Subject: | RE: Mutual Release |

Joe,

I am not sure you are aware of the damages you have caused to ProTerra in your 'undoing' of the JV/ InnovatUS with several parties, including Citec (SPEC), AsiaWest/City of Los Angeles, NYSERDA,…but I can assure you it is very significant.  We are unsure of the reasoning nor your intentions but we too, especially John and I, are devastated by the end result.

Please provide us with a new "walk away" release agreement with each party taking care of their own costs and expenses to help mitigate the fallout.

Regards,

Shan Jamal

The email string is attached as Exhibit 47.

64.     Casper's propensity for mischaracterizing the nature of the parties' relationship and Ephesus Technologies' legal obligations relating thereto would become even more apparent a month later. When Johnston reminded Casper of Ephesus Technologies' confidentiality obligations under the NDA the parties had signed just five months earlier, Casper falsely claimed in a September 27, 2011 email that ProTerra had never signed the NDA:

From: Joe Casper <joe.casper@ephesustech.com>
Date: Tue, 27 Sep 2011 07:50:38
To: John Johnston<jjohnston@proterraled.com>
Subject: Re: NDA

John,  you need to go back through your documents and recall the reason why you did not want to sign the NDA……...  Joe

Joe Casper

Johnston replied the same day and reminded Casper that ProTerra had in fact signed the NDA, and attached the fully-executed version:

> On Sep 27, 2011, at 8:51 AM, jjohnston@proterraled.com wrote:
>
> The original here is signed by both of us, there was no reason not to.
>
> Funny I rarely remember to get it signed and I get accused here for being to trusting.

The email string is attached as Exhibit 48, and the fully executed NDA is attached as Exhibit 25.

65.     As it turns out, Casper had good reason for trying to pretend there was not a binding NDA that protected Johnston's confidential technical information from being misused by Ephesus Technologies for its own benefit. Unbeknownst to Johnston at the time, on December 13, 2011—less than five months after Ephesus Technologies elected to ditch Johnston and less than six months after Johnston and ProTerra shared their confidential and proprietary documents and technical information, including Johnston's unpublished U.S. non-provisional patent application, with Ephesus Technologies under the NDA—Casper and Ephesus Technologies filed their first patent application directed to LED lighting technology, U.S. Provisional Application No. 61/570,072, to which Eaton's '930 Patent now claims priority. The application inaccurately named Casper and others at Ephesus Technologies as inventors and intentionally omitted Johnston as an inventor despite the fact that Ephesus Technologies learned the inventive concepts in the claims directly from Johnston under the NDA. Ephesus Technologies could not have legally developed its own purported proprietary LED lighting products and technology in just a few months' time, electing instead to base its patent application on the LED product samples and confidential technical information and documents that Ephesus Technologies had lured from Johnston and Proterra under the NDA.

66.     Also unbeknownst to Johnston at the time, in December of 2011, Ephesus Technologies—despite (a) Casper telling Johnston in July 2011 that Ephesus Technologies wanted to focus on "energy solutions" instead of lighting products, (b) Casper telling Johnston in August

2011 that Ephesus Technologies was "busy with our wind turbine program," and (c) Casper telling Johnston in August 2011 that Ephesus Technologies "stopped working on ProTerra LED Lighting products as of August 1st"—got its first commercial LED project: a project to retrofit fifteen streetlights in Baldswinville, New York with LED lighting fixtures. Ephesus Technologies (which by this point had apparently started doing business as "Ephesus Lighting") did this project under a $200,000 grant from the New York State Energy Research and Development Authority (NYSERDA). Ephesus Technologies secured this grant and project despite having no experience with LED lighting products or technology before Casper initiated talks with Johnston and ProTerra just nine months earlier in March of 2011 and proceeded to get access to Johnston and ProTerra's confidential information under the NDA. Ephesus Technologies could not have legally developed its own purported proprietary LED lighting products and technology in just a few months' time, and therefore Ephesus Technologies secured the grant and project using the LED product samples and confidential technical information that Ephesus Technologies had obtained from Johnston and ProTerra under the NDA. This would be the first of many commercial LED projects Ephesus Technologies and its successor Ephesus Lighting would secure using confidential and proprietary LED technology that Ephesus Technologies lured away from Johnston and ProTerra under the NDA. An article authored by NYSERDA describing the grant and Baldwinsville project is attached as Exhibit 49.

67.    From there the business opportunities Ephesus Technologies improperly appropriated for itself began to increase in frequency and size. In July of 2012, just one year after Casper and Ephesus Technologies had gotten access to Johnston's LED technology under the NDA, Ephesus Technologies was awarded a contract to install LED lighting in the Onondaga County War Memorial arena located across the street from Ephesus Technologies' offices in the

Syracuse Tech Garden in downtown Syracuse. Upon information and belief, the project was completed and the Ephesus Technologies lights were installed—at a cost of $590,370—by October of 2012. Local newspaper articles describing the project are attached as Exhibits 50 and 51. According to an article published by Eaton (attached as Exhibit 52), this Ephesus Technologies system made the Syracuse arena "the first professional hockey arena in the United States to install LED lights." Ephesus Technologies could not have legally developed its own purported proprietary LED lighting products and technology in such a short amount of time, and therefore Ephesus Technologies secured the project using the LED product samples and confidential technical information that Ephesus Technologies had obtained from Johnston and ProTerra under the NDA.

68.    Upon information and belief, the Ephesus Technologies LED system installed in the Onondaga County War Memorial arena in 2012 infringed Johnston's '685 Patent (which had issued in May 2012). However, Johnston and the Plaintiffs only recently became aware of this project shortly before the filing of this lawsuit.

69.    On October 10, 2012, Ephesus Technologies filed a second provisional application, U.S. Provisional Application No. 61/712,226, to which Eaton's '930 Patent now claims priority. The application inaccurately named Casper and others at Ephesus Technologies as inventors and intentionally omitted Johnston as an inventor despite the fact that Ephesus Technologies learned the inventive concepts in the claims directly from Johnston under the NDA.

70.    On November 1, 2012, with the wind of multiple commercial LED lighting opportunities Ephesus Technologies had usurped for itself at its back, Casper incorporated "Ephesus Lighting, Inc." with the Delaware Secretary of State.

71.     On December 13, 2012, Ephesus Lighting filed PCT Application No. PCT/US2012/069442, which eventually issued in 2017 as Eaton's '930 Patent. The application inaccurately named Casper and others at Ephesus Technologies as inventors and intentionally omitted Johnston as an inventor despite the fact that Ephesus Technologies learned the inventive concepts in the claims directly from Johnston under the NDA.

72.     On December 17, 2013, Ephesus Lighting filed U.S. Provisional Application No. 61/917,054, to which Eaton's '709 Patent, '996 Patent, and '904 Patent now claim priority, and U.S. Provisional Application No. 61/917,030, to which Eaton's '307 Patent, '545 Patent, and '271 Patent now claim priority. These applications named Casper and others at Ephesus Technologies as inventors and intentionally omitted Johnston as an inventor despite the fact that Ephesus Technologies learned one or more of the inventive concepts in the claims directly from Johnston under the NDA.

73.     In July 2014, Johnston learned for the first time that Ephesus Lighting existed and had begun installing LED lighting into several sports arenas and stadiums around the country. Specifically, Johnston learned in July 2014 that the Ottawa Senators NHL franchise was partnering with Ephesus Lighting "in a deal to continue Ottawa's upgrades at Canadian Tire Centre by bringing light-emitting diode (LED) lighting to the arena," which would make that venue "the first NHL venue to be lit with Ephesus LED lights." The Ottawa Senators' news release about the project is attached as Exhibit 53.

74.     On July 15, 2014, Johnston sent a letter to the then-President of Ephesus Lighting, Michael Lorenz, and put Ephesus Lighting on notice that its products infringed the Johnston's U.S. Patent. The letter is attached as Exhibit 54. Ephesus Lighting never responded to that letter.

75.     In September of 2014, Ephesus Lighting installed LED stadium lights at University of Phoenix Stadium in Glendale, Arizona, making that venue the first NFL venue to light its field with LED lighting. That venue would go on to host the Super Bowl on February 1, 2015, making that event the first Super Bowl to utilize LED lighting. An article describing the University of Phoenix Stadium project is attached as Exhibit 55.

76.     In October of 2015, Ephesus Lighting installed LED stadium lights at U.S. Bank Stadium in Minneapolis, Minnesota, making that venue the second NFL venue to light its field with LED lighting. That venue would go on to host the Super Bowl on February 4, 2018, making that event the second Super Bowl to utilize LED lighting. An article published by the Minnesota Vikings describing the project is attached as Exhibit 56. Notably, the article states that Ephesus Lighting "has developed a patented system of LED lights that will be the first of its kind in a new NFL venue," despite the fact that by October of 2015 none of Ephesus Lighting's patent applications had issued as a patent yet.

### *Eaton and/or Cooper Acquire Ephesus Lighting and Continue to Wrongfully Exploit Johnston's Technology and Obtain Patents that Omit Johnston as a Rightful Inventor*

77.     In late October of 2015, Eaton and/or Cooper acquired Ephesus Lighting, including its infringing product line and patent assets that intentionally omitted Johnston as an inventor despite the fact that Ephesus Technologies learned one or more of the inventive concepts in the claims directly from Johnston under the NDA.

78.     On November 17, 2015, Eaton's '307 and '996 Patents issued. These patents list Casper and others at Ephesus Lighting as inventors but omit Johnston as an inventor despite the fact that Ephesus Technologies learned one or more of the inventive concepts in the claims directly from Johnston under the NDA.

79.     On December 28, 2015, Eaton and/or Cooper filed U.S. Provisional Application No. 62/271,497, to which Eaton's '577 Patent now claims priority, U.S. Provisional Application No. 62/271,471, to which Eaton's '619 Patent now claims priority, U.S. Provisional Application No. 62/271,580, to which Eaton's '225 Patent now claims priority, U.S. Provisional Application No. 62/271,598, to which Eaton's '302 Patent now claims priority, U.S. Provisional Application No. 62/271,536, to which Eaton's '418 Patent now claims priority, and U.S. Provisional Application No. 62/271,488, to which Eaton's '066 Patent now claims priority. These applications named Casper and others at Ephesus Lighting as inventors but intentionally omitted Johnston as an inventor despite the fact that Ephesus Technologies learned one or more of the inventive concepts in the claims directly from Johnston under the NDA.

80.     On March 8, 2016, Eaton and/or Cooper filed U.S. Provisional Application No. 62/304,998, to which Eaton's '317 and '431 Patents now claim priority. On August 5, 2016, Eaton and/or Cooper filed U.S. Provisional Application No. 62/371,394, to which Eaton's '057 Patent now claims priority. These applications named Casper and others at Ephesus Lighting as inventors but intentionally omitted Johnston as an inventor despite the fact that Ephesus Technologies learned one or more of the inventive concepts in the claims directly from Johnston under the NDA.

81.     On August 2, 2016, Eaton's '271 Patent issued. The patent lists Casper and others at Ephesus Lighting as inventors but omits Johnston as an inventor despite the fact that Ephesus Technologies learned one or more of the inventive concepts in the claims directly from Johnston under the NDA.

82.     On April 20, 2017, Eaton filed a continuation patent application (U.S. Non-provisional Application No. 15/492,342) claiming priority all the way back to the original provisional application (U.S. Provisional Application No. 61/570,072) filed by Ephesus

31

Technologies in December 2011 shortly after they parted ways with Johnston and ProTerra. The continuation patent application lists Casper and others at Ephesus Lighting as inventors but intentionally omits Johnston as an inventor despite the fact that Ephesus Technologies learned the inventive concepts in the claims directly from Johnston under the NDA. Eaton responded to an Office Action from the USPTO examiner in that application on August 5, 2019, and the USPTO issued a Notice of Allowance and Fees Due on September 3, 2019. Thus, even today Eaton is continuing to pursue patent protection on inventive concepts that Ephesus Technologies learned directly from Johnston under the NDA, with no effort made to compensate or credit Johnston for his inventive contributions.

83.     On May 23, 2017, Eaton's '930 Patent issued. The patent lists Casper and others at Ephesus Lighting as inventors but omits Johnston as an inventor despite the fact that Ephesus Technologies learned the inventive concepts in the claims directly from Johnston under the NDA. Emblematic of the brazen intention of Casper and Ephesus Technologies to improperly use and take credit for Johnston's technology they lured away from Johnston and ProTerra under the NDA, Figure 2 of Eaton's '930 Patent is an obvious copy of a ProTerra assembly drawing that ProTerra provided to Ephesus Technologies under the NDA in June 2011, as shown by the below comparison:



| Confidential Johnston/ProTerra Assembly Drawing Provided to Ephesus Technologies Under the NDA in June 2011 | FIG. 2 of Eaton's '930 Patent (Ex. D) |
| --- | --- |

84.　　On August 8, 2017, Eaton's '302 Patent issued. On August 15, 2017, Eaton's '904 Patent issued. On September 12, 2017, Eaton's '418 Patent issued. On October 24, 2017, Eaton's '431 Patent issued. These patents list Casper and others at Ephesus Lighting as inventors but omit Johnston as an inventor despite the fact that Ephesus Technologies learned one or more of the inventive concepts in the claims directly from Johnston under the NDA.

85.　　On January 2, 2018, Eaton's '066 Patent issued. On February 6, 2018, Eaton's '545 Patent issued. On August 14, 2018, Eaton's '709 Patent issued. On September 25, 2018, Eaton's '317 Patent issued. On October 9, 2018, Eaton's '201 Patent issued. On November 27, 2018, Eaton's '053 Patent issued. On December 25, 2018, Eaton's '577 and '619 Patents issued. These patents list Casper and others at Ephesus Lighting as inventors but omit Johnston as an inventor despite the fact that Ephesus Technologies learned one or more of the inventive concepts in the claims directly from Johnston under the NDA.

86.     On February 3, 2019, Mercedes Benz Stadium in Atlanta, Georgia hosted the Super Bowl, making that event the third Super Bowl to utilize LED lighting from Defendants. A Syracuse newspaper article attached as Exhibit 57 notes that the next Super Bowl, scheduled for February 2, 2020, at Hard Rock Stadium in Miami, Florida, will also utilize LED lighting from Defendants.

87.     On February 5, 2019, Eaton's '057 Patent issued. On April 2, 2019, Eaton's '225 Patent issued. These patents list Casper and others at Ephesus Lighting as inventors but omit Johnston as an inventor despite the fact that Ephesus Technologies learned one or more of the inventive concepts in the claims directly from Johnston under the NDA.

88.     A 2018 press release from Eaton, attached as Exhibit 58, states that "Hundreds of facilities have made the switch to Eaton's Ephesus LED sports lighting system including: University of Phoenix Stadium (Arizona Cardinals); Hard Rock Stadium (Miami Dolphins); PNC Park (Pittsburgh Pirates); the United Center (Chicago Bulls and Black Hawks); Bridgestone Arena (Nashville Predators); and the historic Martinsville Speedway in Virginia — the first NASCAR track with LED lighting."

89.     In numerous press releases and other public statements, Eaton has trumpeted that its products are "patented" and include "patented technology." *See* Exhibits 59 and 60. Moreover, on Defendants' website they explicitly state that certain of their "Ephesus Sports Lighting" products are covered by several of the Eaton Patents-in-Suit (all of which fail to list Johnston as a rightful inventor and improperly utilize technology stolen from Johnston). *See* Exhibit 61.

90.     By all accounts, Defendants' LED sports lighting business has been wildly successful, with their products having been used as stadium lighting for three of the last five Super Bowls (with a fourth Super Bowl to come in 2020). Defendants tout that their products have now

been incorporated into "hundreds" of professional and college sports arenas and stadiums around the country.

91.     However, Defendants' wildly successful LED sports lighting business was unlawfully built on technology that was invented by Johnston, disclosed to Ephesus Technologies under the NDA in 2011, and improperly incorporated into Defendants' products and patents without any attempt to properly credit and compensate Johnston and/or his assignees for his inventive contributions that made the success of Defendants' LED sports lighting business possible.

92.     Plaintiffs seek fair compensation for Defendants' willfully infringing and tortious conduct and seek correction of the inventorship on the Eaton Patents-in-Suit to formally recognize Johnston's inventive contributions to those patents.

## COUNT I
## INFRINGEMENT OF THE '685 PATENT

93.     Plaintiffs incorporate the preceding paragraphs as if fully set forth herein.

94.     Upon information and belief, in violation of 35 U.S.C. § 271(a), Defendants have directly infringed and continue to directly infringe, both literally and under the doctrine of equivalents, one or more claims of the '685 Patent, by, without limitation, making, using, selling, and/or offering for sale LED lighting products that include all of the limitations of at least claim 1 of the '685 Patent.

95.     Attached hereto as Exhibits 62, 63, and 64, and incorporated by reference herein, are claim charts detailing how Defendants' representative Visium Series, Arena Series, and All Field Series products satisfy each element of independent claim 1 of the '685 Patent. On information and belief, at least Defendants' Altus, Arena Pro, and Prism products (and likely other

of Defendants' LED products, including those under development) infringe in substantially the same way.

96.     Plaintiffs TruSolis and JFT have been damaged as a result of the infringing conduct by Defendants as alleged above. Thus, Defendants are liable to Plaintiffs TruSolis and JFT in an amount that adequately compensates them for such infringements, which, by law, cannot be less than a reasonable royalty, together with interest and costs as fixed by this Court under 35 U.S.C. § 284.

97.     Plaintiffs and/or their predecessors-in-interest have satisfied all statutory obligations required to collect pre-filing damages for the full period allowed by law for infringement of the '685 Patent.

98.     Upon information and belief, Defendants purchased Ephesus Lighting, along with substantially all of its assets and liabilities, and are therefore its successors-in-interest thereto. Defendants are therefore liable for damages for Ephesus Lighting's infringement of the '685 Patent that took place before Defendants purchased Ephesus Lighting in 2015. Moreover, Ephesus Lighting's (and its predecessor Ephesus Technologies') prior knowledge of the '685 Patent and Ephesus Lighting's (and its predecessor Ephesus Technologies') infringement thereof are imputed to Defendants.

99.     On information and belief, because Ephesus Technologies was provided with a copy of the patent application that eventually issued as the '685 Patent, Ephesus Lighting either had direct knowledge of the '685 Patent on the day it issued in 2012 or was willfully blind to the existence of the patent from the day of issuance. Ephesus Lighting continued to infringe the '685 Patent from the day it issued, despite being on notice of the '685 Patent and Ephesus Lighting's infringement thereof. Defendants' infringement of the '685 Patent is therefore knowing, willful,

deliberate, and in disregard of Plaintiffs' patent rights. As a result of at least this conduct, Plaintiffs TruSolis and JFT are entitled to enhanced damages under 35 U.S.C. § 284 and to attorney fees and costs under 35 U.S.C. § 285.

**COUNT II**
**CORRECTION OF INVENTORSHIP OF THE '930 PATENT UNDER 35 U.S.C. § 256**

100.    Plaintiffs repeat and re-allege the paragraphs above as if fully set forth herein.

101.    The '930 Patent does not list Johnston as an inventor.

102.    Johnston invented novel subject matter that is embodied in one or more claims of the '930 Patent, and did so before the filing of the application for the '930 Patent.

103.    Johnston is at a minimum a co-inventor of the '930 Patent.

104.    The omission of Johnston as an inventor of the '930 Patent was done without Johnston's knowledge or any deceptive intent on the part of Johnston.

105.    Because Johnston is at a minimum a co-inventor, this Court should issue an order pursuant to 35 U.S.C. § 256 directing the Commissioner of Patents to add Johnston as an inventor of the '930 Patent.

106.    Further, if the current inventors listed on the '930 Patent are found not to be inventors of the '930 Patent, this Court should issue an order pursuant to 35 U.S.C. § 256 directing the Commissioner of Patents to remove those persons as inventors of the '930 Patent.

**COUNT III**
**CORRECTION OF INVENTORSHIP OF THE '709 PATENT UNDER 35 U.S.C. § 256**

107.    Plaintiffs repeat and re-allege the paragraphs above as if fully set forth herein.

108.    The '709 Patent does not list Johnston as an inventor.

109.    Johnston invented novel subject matter that is embodied in one or more claims of the '709 Patent, and did so before the filing of the application for the '709 Patent.

110.    Johnston is at a minimum a co-inventor of the '709 Patent.

111.   The omission of Johnston as an inventor of the '709 Patent was done without Johnston's knowledge or any deceptive intent on the part of Johnston.

112.   Because Johnston is at a minimum a co-inventor, this Court should issue an order pursuant to 35 U.S.C. § 256 directing the Commissioner of Patents to add Johnston as an inventor of the '709 Patent.

113.   Further, if the current inventors listed on the '709 Patent are found not to be inventors of the '709 Patent, this Court should issue an order pursuant to 35 U.S.C. § 256 directing the Commissioner of Patents to remove those persons as inventors of the '709 Patent.

**COUNT IV**
**CORRECTION OF INVENTORSHIP OF THE '317 PATENT UNDER 35 U.S.C. § 256**

114.   Plaintiffs repeat and re-allege the paragraphs above as if fully set forth herein.

115.   The '317 Patent does not list Johnston as an inventor.

116.   Johnston invented novel subject matter that is embodied in one or more claims of the '317 Patent, and did so before the filing of the application for the '317 Patent.

117.   Johnston is at a minimum a co-inventor of the '317 Patent.

118.   The omission of Johnston as an inventor of the '317 Patent was done without Johnston's knowledge or any deceptive intent on the part of Johnston.

119.   Because Johnston is at a minimum a co-inventor, this Court should issue an order pursuant to 35 U.S.C. § 256 directing the Commissioner of Patents to add Johnston as an inventor of the '317 Patent.

120.   Further, if the current inventors listed on the '317 Patent are found not to be inventors of the '317 Patent, this Court should issue an order pursuant to 35 U.S.C. § 256 directing the Commissioner of Patents to remove those persons as inventors of the '317 Patent.

## COUNT V
## CORRECTION OF INVENTORSHIP OF THE '201 PATENT UNDER 35 U.S.C. § 256

121.    Plaintiffs repeat and re-allege the paragraphs above as if fully set forth herein.

122.    The '201 Patent does not list Johnston as an inventor.

123.    Johnston invented novel subject matter that is embodied in one or more claims of the '201 Patent, and did so before the filing of the application for the '201 Patent.

124.    Johnston is at a minimum a co-inventor of the '201 Patent.

125.    The omission of Johnston as an inventor of the '201 Patent was done without Johnston's knowledge or any deceptive intent on the part of Johnston.

126.    Because Johnston is at a minimum a co-inventor, this Court should issue an order pursuant to 35 U.S.C. § 256 directing the Commissioner of Patents to add Johnston as an inventor of the '201 Patent.

127.    Further, if the current inventors listed on the '201 Patent are found not to be inventors of the '201 Patent, this Court should issue an order pursuant to 35 U.S.C. § 256 directing the Commissioner of Patents to remove those persons as inventors of the '201 Patent.

## COUNT VI
## CORRECTION OF INVENTORSHIP OF THE '053 PATENT UNDER 35 U.S.C. § 256

128.    Plaintiffs repeat and re-allege the paragraphs above as if fully set forth herein.

129.    The '053 Patent does not list Johnston as an inventor.

130.    Johnston invented novel subject matter that is embodied in one or more claims of the '053 Patent, and did so before the filing of the application for the '053 Patent.

131.    Johnston is at a minimum a co-inventor of the '053 Patent.

132.    The omission of Johnston as an inventor of the '053 Patent was done without Johnston's knowledge or any deceptive intent on the part of Johnston.

133.    Because Johnston is at a minimum a co-inventor, this Court should issue an order pursuant to 35 U.S.C. § 256 directing the Commissioner of Patents to add Johnston as an inventor of the '053 Patent.

134.    Further, if the current inventors listed on the '053 Patent are found not to be inventors of the '053 Patent, this Court should issue an order pursuant to 35 U.S.C. § 256 directing the Commissioner of Patents to remove those persons as inventors of the '053 Patent.

## COUNT VII
## CORRECTION OF INVENTORSHIP OF THE '577 PATENT UNDER 35 U.S.C. § 256

135.    Plaintiffs repeat and re-allege the paragraphs above as if fully set forth herein.

136.    The '577 Patent does not list Johnston as an inventor.

137.    Johnston invented novel subject matter that is embodied in one or more claims of the '577 Patent, and did so before the filing of the application for the '577 Patent.

138.    Johnston is at a minimum a co-inventor of the '577 Patent.

139.    The omission of Johnston as an inventor of the '577 Patent was done without Johnston's knowledge or any deceptive intent on the part of Johnston.

140.    Because Johnston is at a minimum a co-inventor, this Court should issue an order pursuant to 35 U.S.C. § 256 directing the Commissioner of Patents to add Johnston as an inventor of the '577 Patent.

141.    Further, if the current inventors listed on the '577 Patent are found not to be inventors of the '577 Patent, this Court should issue an order pursuant to 35 U.S.C. § 256 directing the Commissioner of Patents to remove those persons as inventors of the '577 Patent.

## COUNT VIII
## CORRECTION OF INVENTORSHIP OF THE '619 PATENT UNDER 35 U.S.C. § 256

142.    Plaintiffs repeat and re-allege the paragraphs above as if fully set forth herein.

143.    The '619 Patent does not list Johnston as an inventor.

144.    Johnston invented novel subject matter that is embodied in one or more claims of the '619 Patent, and did so before the filing of the application for the '619 Patent.

145.    Johnston is at a minimum a co-inventor of the '619 Patent.

146.    The omission of Johnston as an inventor of the '619 Patent was done without Johnston's knowledge or any deceptive intent on the part of Johnston.

147.    Because Johnston is at a minimum a co-inventor, this Court should issue an order pursuant to 35 U.S.C. § 256 directing the Commissioner of Patents to add Johnston as an inventor of the '619 Patent.

148.    Further, if the current inventors listed on the '619 Patent are found not to be inventors of the '619 Patent, this Court should issue an order pursuant to 35 U.S.C. § 256 directing the Commissioner of Patents to remove those persons as inventors of the '619 Patent.

**COUNT IX**
**CORRECTION OF INVENTORSHIP OF THE '057 PATENT UNDER 35 U.S.C. § 256**

149.    Plaintiffs repeat and re-allege the paragraphs above as if fully set forth herein.

150.    The '057 Patent does not list Johnston as an inventor.

151.    Johnston invented novel subject matter that is embodied in one or more claims of the '057 Patent, and did so before the filing of the application for the '057 Patent.

152.    Johnston is at a minimum a co-inventor of the '057 Patent.

153.    The omission of Johnston as an inventor of the '057 Patent was done without Johnston's knowledge or any deceptive intent on the part of Johnston.

154.    Because Johnston is at a minimum a co-inventor, this Court should issue an order pursuant to 35 U.S.C. § 256 directing the Commissioner of Patents to add Johnston as an inventor of the '057 Patent.

155.     Further, if the current inventors listed on the '057 Patent are found not to be inventors of the '057 Patent, this Court should issue an order pursuant to 35 U.S.C. § 256 directing the Commissioner of Patents to remove those persons as inventors of the '057 Patent.

**COUNT X**
**CORRECTION OF INVENTORSHIP OF THE '225 PATENT UNDER 35 U.S.C. § 256**

156.     Plaintiffs repeat and re-allege the paragraphs above as if fully set forth herein.

157.     The '225 Patent does not list Johnston as an inventor.

158.     Johnston invented novel subject matter that is embodied in one or more claims of the '225 Patent, and did so before the filing of the application for the '225 Patent.

159.     Johnston is at a minimum a co-inventor of the '225 Patent.

160.     The omission of Johnston as an inventor of the '225 Patent was done without Johnston's knowledge or any deceptive intent on the part of Johnston.

161.     Because Johnston is at a minimum a co-inventor, this Court should issue an order pursuant to 35 U.S.C. § 256 directing the Commissioner of Patents to add Johnston as an inventor of the '225 Patent.

162.     Further, if the current inventors listed on the '225 Patent are found not to be inventors of the '225 Patent, this Court should issue an order pursuant to 35 U.S.C. § 256 directing the Commissioner of Patents to remove those persons as inventors of the '225 Patent.

**COUNT XI**
**CORRECTION OF INVENTORSHIP OF THE '307 PATENT UNDER 35 U.S.C. § 256**

163.     Plaintiffs repeat and re-allege the paragraphs above as if fully set forth herein.

164.     The '307 Patent does not list Johnston as an inventor.

165.     Johnston invented novel subject matter that is embodied in one or more claims of the '307 Patent, and did so before the filing of the application for the '307 Patent.

166.     Johnston is at a minimum a co-inventor of the '307 Patent.

167.   The omission of Johnston as an inventor of the '307 Patent was done without Johnston's knowledge or any deceptive intent on the part of Johnston.

168.   Because Johnston is at a minimum a co-inventor, this Court should issue an order pursuant to 35 U.S.C. § 256 directing the Commissioner of Patents to add Johnston as an inventor of the '307 Patent.

169.   Further, if the current inventors listed on the '307 Patent are found not to be inventors of the '307 Patent, this Court should issue an order pursuant to 35 U.S.C. § 256 directing the Commissioner of Patents to remove those persons as inventors of the '307 Patent.

**COUNT XII**
**CORRECTION OF INVENTORSHIP OF THE '996 PATENT UNDER 35 U.S.C. § 256**

170.   Plaintiffs repeat and re-allege the paragraphs above as if fully set forth herein.

171.   The '996 Patent does not list Johnston as an inventor.

172.   Johnston invented novel subject matter that is embodied in one or more claims of the '996 Patent, and did so before the filing of the application for the '996 Patent.

173.   Johnston is at a minimum a co-inventor of the '996 Patent.

174.   The omission of Johnston as an inventor of the '996 Patent was done without Johnston's knowledge or any deceptive intent on the part of Johnston.

175.   Because Johnston is at a minimum a co-inventor, this Court should issue an order pursuant to 35 U.S.C. § 256 directing the Commissioner of Patents to add Johnston as an inventor of the '996 Patent.

176.   Further, if the current inventors listed on the '996 Patent are found not to be inventors of the '996 Patent, this Court should issue an order pursuant to 35 U.S.C. § 256 directing the Commissioner of Patents to remove those persons as inventors of the '996 Patent.

**COUNT XIII**
**CORRECTION OF INVENTORSHIP OF THE '302 PATENT UNDER 35 U.S.C. § 256**

177.    Plaintiffs repeat and re-allege the paragraphs above as if fully set forth herein.

178.    The '302 Patent does not list Johnston as an inventor.

179.    Johnston invented novel subject matter that is embodied in one or more claims of the '302 Patent, and did so before the filing of the application for the '302 Patent.

180.    Johnston is at a minimum a co-inventor of the '302 Patent.

181.    The omission of Johnston as an inventor of the '302 Patent was done without Johnston's knowledge or any deceptive intent on the part of Johnston.

182.    Because Johnston is at a minimum a co-inventor, this Court should issue an order pursuant to 35 U.S.C. § 256 directing the Commissioner of Patents to add Johnston as an inventor of the '302 Patent.

183.    Further, if the current inventors listed on the '302 Patent are found not to be inventors of the '302 Patent, this Court should issue an order pursuant to 35 U.S.C. § 256 directing the Commissioner of Patents to remove those persons as inventors of the '302 Patent.

**COUNT XIV**
**CORRECTION OF INVENTORSHIP OF THE '418 PATENT UNDER 35 U.S.C. § 256**

184.    Plaintiffs repeat and re-allege the paragraphs above as if fully set forth herein.

185.    The '418 Patent does not list Johnston as an inventor.

186.    Johnston invented novel subject matter that is embodied in one or more claims of the '418 Patent, and did so before the filing of the application for the '418 Patent.

187.    Johnston is at a minimum a co-inventor of the '418 Patent.

188.    The omission of Johnston as an inventor of the '418 Patent was done without Johnston's knowledge or any deceptive intent on the part of Johnston.

189.    Because Johnston is at a minimum a co-inventor, this Court should issue an order pursuant to 35 U.S.C. § 256 directing the Commissioner of Patents to add Johnston as an inventor of the '418 Patent.

190.    Further, if the current inventors listed on the '418 Patent are found not to be inventors of the '418 Patent, this Court should issue an order pursuant to 35 U.S.C. § 256 directing the Commissioner of Patents to remove those persons as inventors of the '418 Patent.

**COUNT XV**
**CORRECTION OF INVENTORSHIP OF THE '431 PATENT UNDER 35 U.S.C. § 256**

191.    Plaintiffs repeat and re-allege the paragraphs above as if fully set forth herein.

192.    The '431 Patent does not list Johnston as an inventor.

193.    Johnston invented novel subject matter that is embodied in one or more claims of the '431 Patent, and did so before the filing of the application for the '431 Patent.

194.    Johnston is at a minimum a co-inventor of the '431 Patent.

195.    The omission of Johnston as an inventor of the '431 Patent was done without Johnston's knowledge or any deceptive intent on the part of Johnston.

196.    Because Johnston is at a minimum a co-inventor, this Court should issue an order pursuant to 35 U.S.C. § 256 directing the Commissioner of Patents to add Johnston as an inventor of the '431 Patent.

197.    Further, if the current inventors listed on the '431 Patent are found not to be inventors of the '431 Patent, this Court should issue an order pursuant to 35 U.S.C. § 256 directing the Commissioner of Patents to remove those persons as inventors of the '431 Patent.

**COUNT XVI**
**CORRECTION OF INVENTORSHIP OF THE '066 PATENT UNDER 35 U.S.C. § 256**

198.    Plaintiffs repeat and re-allege the paragraphs above as if fully set forth herein.

199.    The '066 Patent does not list Johnston as an inventor.

200.    Johnston invented novel subject matter that is embodied in one or more claims of the '066 Patent, and did so before the filing of the application for the '066 Patent.

201.    Johnston is at a minimum a co-inventor of the '066 Patent.

202.    The omission of Johnston as an inventor of the '066 Patent was done without Johnston's knowledge or any deceptive intent on the part of Johnston.

203.    Because Johnston is at a minimum a co-inventor, this Court should issue an order pursuant to 35 U.S.C. § 256 directing the Commissioner of Patents to add Johnston as an inventor of the '066 Patent.

204.    Further, if the current inventors listed on the '066 Patent are found not to be inventors of the '066 Patent, this Court should issue an order pursuant to 35 U.S.C. § 256 directing the Commissioner of Patents to remove those persons as inventors of the '066 Patent.

**COUNT XVII**
**CORRECTION OF INVENTORSHIP OF THE '545 PATENT UNDER 35 U.S.C. § 256**

205.    Plaintiffs repeat and re-allege the paragraphs above as if fully set forth herein.

206.    The '545 Patent does not list Johnston as an inventor.

207.    Johnston invented novel subject matter that is embodied in one or more claims of the '545 Patent, and did so before the filing of the application for the '545 Patent.

208.    Johnston is at a minimum a co-inventor of the '545 Patent.

209.    The omission of Johnston as an inventor of the '545 Patent was done without Johnston's knowledge or any deceptive intent on the part of Johnston.

210.    Because Johnston is at a minimum a co-inventor, this Court should issue an order pursuant to 35 U.S.C. § 256 directing the Commissioner of Patents to add Johnston as an inventor of the '545 Patent.

211.    Further, if the current inventors listed on the '545 Patent are found not to be inventors of the '545 Patent, this Court should issue an order pursuant to 35 U.S.C. § 256 directing the Commissioner of Patents to remove those persons as inventors of the '545 Patent.

## COUNT XVIII
## CORRECTION OF INVENTORSHIP OF THE '904 PATENT UNDER 35 U.S.C. § 256

212.    Plaintiffs repeat and re-allege the paragraphs above as if fully set forth herein.

213.    The '904 Patent does not list Johnston as an inventor.

214.    Johnston invented novel subject matter that is embodied in one or more claims of the '904 Patent, and did so before the filing of the application for the '904 Patent.

215.    Johnston is at a minimum a co-inventor of the '904 Patent.

216.    The omission of Johnston as an inventor of the '904 Patent was done without Johnston's knowledge or any deceptive intent on the part of Johnston.

217.    Because Johnston is at a minimum a co-inventor, this Court should issue an order pursuant to 35 U.S.C. § 256 directing the Commissioner of Patents to add Johnston as an inventor of the '904 Patent.

218.    Further, if the current inventors listed on the '904 Patent are found not to be inventors of the '904 Patent, this Court should issue an order pursuant to 35 U.S.C. § 256 directing the Commissioner of Patents to remove those persons as inventors of the '904 Patent.

## COUNT XIX
## CORRECTION OF INVENTORSHIP OF THE '271 PATENT UNDER 35 U.S.C. § 256

219.    Plaintiffs repeat and re-allege the paragraphs above as if fully set forth herein.

220.    The '271 Patent does not list Johnston as an inventor.

221.    Johnston invented novel subject matter that is embodied in one or more claims of the '271 Patent, and did so before the filing of the application for the '271 Patent.

222.    Johnston is at a minimum a co-inventor of the '271 Patent.

223.    The omission of Johnston as an inventor of the '271 Patent was done without Johnston's knowledge or any deceptive intent on the part of Johnston.

224.    Because Johnston is at a minimum a co-inventor, this Court should issue an order pursuant to 35 U.S.C. § 256 directing the Commissioner of Patents to add Johnston as an inventor of the '271 Patent.

225.    Further, if the current inventors listed on the '271 Patent are found not to be inventors of the '271 Patent, this Court should issue an order pursuant to 35 U.S.C. § 256 directing the Commissioner of Patents to remove those persons as inventors of the '271 Patent.

## COUNT XX
## MISAPPROPRIATION OF TRADE SECRETS UNDER
## THE DEFEND TRADE SECRETS ACT,
## THE TEXAS UNIFORM TRADE SECRETS ACT, AND TEXAS COMMON LAW

226.    Plaintiffs repeat and re-allege the paragraphs above as if fully set forth herein.

227.    Johnston has taken reasonable measures to protect the confidentiality of his valuable trade secrets related to LED lighting technology, including requiring that prospective partners such as Ephesus Technologies sign non-disclosure agreements to protect the confidentiality of Johnston's trade secrets. Johnston's trade secrets have actual independent economic value derived from Johnston's experience in the LED lighting field.

228.    Johnston's LED lighting technology is intended for use in interstate or foreign commerce.

229.    Defendants (including through their predecessors Ephesus Technologies and Ephesus Lighting) misappropriated Johnston's trade secrets by using such trade secrets to file for and obtain patents incorporating such trade secrets and to develop and commercialize LED lighting products incorporating such trade secrets, knowing that each of them has a duty to preserve the

confidentiality of Johnston's trade secrets, including under the NDA signed by Ephesus Technologies.

230. Johnston has suffered damages and Defendants have been unjustly enriched as a result of Defendants' misappropriation of Johnston's trade secrets.

231. Defendants' misappropriation of Johnston's trade secrets was willful and malicious.

232. Johnston is entitled to recover the actual loss suffered by him, any additional damages to account for Defendants' unjust enrichment, and exemplary damages as a result of Defendants' misappropriation of his trade secrets under 18 U.S.C. § 1836(b)(3)(B) and (C), the Texas Uniform Trade Secrets Act, and Texas Common Law.

## COUNT XXI
## UNJUST ENRICHMENT

233. Plaintiffs repeat and re-allege the paragraphs above as if fully set forth herein.

234. Johnston conferred upon Ephesus Technologies, and therefore Defendants, a substantial benefit by providing them his inventions and inventive contributions relating to LED lighting technology.

235. Ephesus Technologies, and therefore Defendants, knew that Johnston was not conferring such inventions and inventive contributions gratuitously.

236. Ephesus Technologies, and therefore Defendants, accepted and retained the inventions and inventive contributions and resulting patents under circumstances which render it inequitable for Defendants to do so without paying for the value of the inventions and inventive contributions and resulting patents. By patenting Johnston's inventions and inventive contributions without naming Johnston as an inventor on such patents, upon information and belief, Defendants have gained numerous benefits, such as good will, the ability to license the claimed subject matter,

improvement to their reputation in the LED lighting industry, and the ability to attract investors and business partners.

237.     In contrast to the benefits gained by Defendants, Johnston (and therefore Plaintiffs as his assignee and their exclusive licensee) was impoverished by Defendants' unjust retention of these benefits. By way of patenting Johnston's inventions and inventive contributions without naming Johnston as an inventor on such patents, Defendants have directly harmed Johnston (and therefore Plaintiffs as his assignee and their exclusive licensee) by denying Johnston the benefit of the use of his inventions and inventive contributions. Johnston (and therefore Plaintiffs as his assignee and their exclusive licensee) did not and could not have known that Defendants would fraudulently claim that they had invented the subject matter that was Johnston's inventions and inventive contributions.

238.     Defendants' unjust retention of these benefits, including through their patenting of the subject matter that is Johnston's inventions and inventive contributions without naming Johnston as an inventor on such patents, is inequitable in view of at least the fact that Johnston (and therefore Plaintiffs as his assignee and their exclusive licensee) was not compensated.

239.     In view of the benefits to Defendants and the corresponding impoverishment of Johnston (and therefore Plaintiffs as his assignee and their exclusive licensee), Plaintiffs are without adequate legal remedy.

240.     In order to prevent Defendants' unjust enrichment, this Court should enter judgment against Defendants for the value that Defendants have unjustly obtained, as well as costs, interest, and attorney fees as provided by law.

**COUNT XXII**
**MONEY HAD AND RECEIVED**

241.     Plaintiffs repeat and re-allege the paragraphs above as if fully set forth herein.

242.    Plaintiffs request damages constituting restitution of money had and received along with related interest, fees, and costs.

243.    By patenting Johnston's inventions and inventive contributions without naming Johnston as an inventor on such patents, upon information and belief, Defendants have gained numerous benefits, such as good will, the ability to license the claimed subject matter, improvement to their reputation in the LED lighting industry, and the ability to attract investors and business partners.

244.    Defendants hold money received from said benefits that in equity and good conscience belongs to Plaintiffs.

## JURY DEMAND

Defendants hereby requests a trial by jury on all issues so triable by right.

## PRAYER FOR RELIEF

Plaintiffs request that the Court find in their favor and against Defendants, and that the Court grant Plaintiffs the following relief:

a.     Judgment in Plaintiffs' favor on each count;

b.     Judgment that one or more claims of the '685 Patent have been infringed, either literally and/or under the doctrine of equivalents, by Defendants and/or all others acting in concert therewith;

c.     An award of a reasonable ongoing royalty for future infringement of the '685 Patent;

d.     Judgment that Defendants account for and pay to Plaintiffs all damages to and costs incurred by Plaintiffs because of Defendants' infringing activities and other conduct complained

of herein, including an award of all increased damages to which Plaintiffs are entitled for Defendants' willful infringement under 35 U.S.C. § 284;

       e.       That Plaintiffs be granted pre-judgment and post-judgment interest on the damages caused by Defendants' infringing activities and other conduct complained of herein;

       f.       That this Court declare this an exceptional case and award Plaintiffs its reasonable attorney fees and costs in accordance with 35 U.S.C. § 285;

       g.       Order the United States Patent and Trademark Office to correct the inventorship of United States Patent Nos. 9,657,930; 10,051,709; 10,085,317; 10,098,201; 10,143,053; 10,161,577; 10,161,619; 10,201,057; 10,251,225; 9,188,307; 9,189,996; 9,730,302; 9,759,418; 9,800,431; 9,857,066; 9,888,545; 9,736,904; and 9,408,271 to name Johnston as the sole inventor, or, in the alternative as appropriate, as a co-inventor with the individuals currently listed as inventors on those patents;

       h.       Judgment in favor of Johnston that the Defendants misappropriated his trade secrets under 18 U.S.C. § 1836(b), the Texas Uniform Trade Secrets Act, and Texas Common Law;

       i.       Judgment and order for damages against Defendants under 18 U.S.C. § 1836(b)(3)(B), the Texas Uniform Trade Secrets Act, and Texas Common Law;

       j.       Judgment and order for exemplary damages against Defendants under 18 U.S.C. § 1836(b)(3)(C), the Texas Uniform Trade Secrets Act, and Texas Common Law;

       k.       Judgment against Defendants for the value that Defendants have been unjustly enriched, as well as costs, interest, and attorney fees as provided by law;

       l.       Judgment against Defendants for the damages constituting restitution of money had and received along with related costs, interest, and attorney fees as provided by law; and

m.    That Plaintiffs be granted such other and further relief as the Court may deem just and proper under the circumstances.


November 12, 2019                          Respectfully submitted,


                                           /s/ Gilbert A. Greene
                                           Gilbert A. Greene
                                             State Bar No. 24045976
                                           J. Bradford Thompson
                                             State Bar No. 24046968
                                           Thomas W. Sankey
                                             State Bar No. 17635670
                                           Diana M. Sangalli
                                             State Bar No. 24033926
                                           Pierre J. Hubert
                                             State Bar No. 24002317
                                           Jun Zheng
                                             State Bar No. 24102681
                                           **DUANE MORRIS LLP**
                                           Las Cimas IV
                                           900 S. Capital of Texas Hwy, Suite 300
                                           Austin, TX 78746-5435
                                           Tel: (512) 277-2300
                                           Fax: (512) 277-2301
                                           *BGreene@duanemorris.com*
                                           *BThompson@duanemorris.com*
                                           *TWSankey@duanemorris.com*
                                           *DMsangalli@duanemorris.com*
                                           *PJHubert@duanemorris.com*
                                           *JZheng@duanemorris.com*

                                           **ATTORNEYS FOR PLAINTIFFS TRUSUN
                                           TECHNOLOGIES, LLC; THE JOHNSTON
                                           FAMILY TRUST; AND JOHN F.
                                           JOHNSTON**