## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF TEXAS
## WACO DIVISION

TRUSUN TECHNOLOGIES, LLC D/B/A
TRUSOLIS TECHNOLOGIES;
THE JOHNSTON FAMILY TRUST; AND
JOHN F. JOHNSTON,

          Plaintiffs,

v.                                                     No. 6:19-CV-00656-ADA

EATON CORPORATION; AND
COOPER LIGHTING, LLC d/b/a
COOPER LIGHTING SOLUTIONS,

          Defendants.

## DEFENDANTS' MOTION TO DISMISS THE FIRST AMENDED COMPLAINT

# TABLE OF CONTENTS

**Page**

I. LEGAL STANDARD ................................................................................................ 2

II. ARGUMENT ....................................................................................................... 3

 A. The Trade Secret Misappropriation Count (XXXI) Is Barred by the Statutes of Limitations and Should Be Dismissed with Prejudice. .................................... 3

  1. Johnston was on inquiry notice of the alleged misappropriation no later than 2013, when he believed that Ephesus had not returned confidential information pursuant to the ProTerra-Ephesus NDA ............ 4

  2. Johnston was on constructive notice of the alleged misappropriation in 2014 when Ephesus's patent application published ............................. 6

  3. Johnston had actual notice of the alleged misappropriation in 2014 when he sent a cease-and-desist letter to Ephesus seeking an "equitable arrangement" for its use of his alleged proprietary LED technology ................................................................................................. 9

 B. The Fraudulent Concealment Count (XXXIV) Should Be Dismissed As Time-Barred. ...................................................................................................... 10

 C. The Unjust Enrichment and Money Had & Received Counts (XXXII and XXXIII) Should Be Dismissed as Time-Barred, Preempted, and Failing to State a Claim ...................................................................................................... 12

  1. These claims are barred by the statute of limitations ............................... 13

  2. Federal patent law preempts both claims as-pleaded .............................. 15

  3. Alternatively, the FAC fails to state a claim on the merits ..................... 17

 D. The Correction of Inventorship Counts (II–XXX) Fail to State a Claim and Should Be Dismissed as to Sole Inventorship. .................................................. 18

 E. All Claims Against Eaton Corporation Should Be Dismissed ........................... 19

 F. Further Amendments Would Be Futile and Should Be Denied .......................... 19

III. CONCLUSION ................................................................................................... 20

# TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*Acad. of Allergy and Asthma et al., v Quest Diagnostics Inc.*,
    2019 WL 919203 (W.D. Tex. Feb. 2, 2019) ............................................................................11

*Adams v. Nissan N. Am., Inc.*,
    395 F. Supp. 3d 838 (S.D. Tex. 2018) ...................................................................................11

*Alamar Biosciences, Inc. v. Difco Labs., Inc.*,
    Civ-S-941856 DFL PAN, 1995 WL 912345 (E.D. Cal. Oct. 13, 1995) ...............................7, 8

*Alta Devices, Inc. v. LG Elecs., Inc.*,
    No. 18-CV-00404-LHK, 2019 WL 1924992 (N.D. Cal. Apr. 30, 2019) .................................5

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009) ................................................................................1–2, 12, 17, 19

*Autry v. Dearman*,
    933 S.W.2d 182 (Tex. App. 14th 1996) ...............................................................................13

*Barnett v. Surefire Med., Inc.*,
    342 F. Supp. 3d 1167 (D. Colo. 2018) ................................................................................14

*Bell Atl. Corp. v. Twombly*,
    550 U.S. 544 (2007) ................................................................................1–2, 12, 17, 19

*CardiAQ Valve Techs., Inc. v. Neovasc, Inc.*,
    57 F. Supp. 3d 118 (D. Mass. 2014) ...................................................................................18

*City of Corpus Christi v. S.S. Smith & Sons Masonry, Inc.*,
    736 S.W.2d 247 (Tex. Ct. App. 1987) .................................................................................17

*Eli Lilly & Co. v. Aradigm Corp.*,
    376 F.3d 1352 (Fed. Cir. 2004) ..........................................................................................18

*Elledge v. Friberg-Cooper Water Supply Corp.*,
    240 S.W.3d 869 (Tex. 2007) ...............................................................................................13

*Ethox Chem., LLC v. Coca-Cola Co.*,
    No. CV 6:12-1682-KFM, 2015 WL 12807724 (D.S.C. Mar. 3, 2015) ............................16–17

*Foman v. Davis*,
    371 U.S. 178 (1962) ............................................................................................................20

## TABLE OF AUTHORITIES
### (Continued)

**Page(s)**

*Hernandez v. Frazier*,
No. SA-11-CA-9-FB, 2012 WL 12896913 (W.D. Tex. Jan. 26, 2012)............................10–11

*J.M. Huber Corp. v. Positive Action Tool of Ohio Co.*,
879 F. Supp. 705 (S.D. Tex. 1995) .........................................................................................4

*James v. J2 Cloud Servs. Inc.*,
No. 2:16-CV-05769-CAS(PJWx), 2018 WL 6092461 (C.D. Cal. Nov. 19, 2018) ................15

*Kerlin v. Sauceda*,
263 S.W.3d 920 (Tex. 2008).....................................................................................................3

*Maatuk v. Emerson Elec., Inc.*,
781 F. App'x 1002 (Fed. Cir. 2019) .......................................................................................10

*Mayo v. Hartford Life Ins. Co.*,
354 F.3d 400 (5th Cir. 2004) .............................................................................................13–14

*Miller-Rogaska, Inc. v. Bank One, Tex.*,
931 S.W.2d 655 (Tex. App.—Dallas 1996)...........................................................................17

*Moddha Interactive, Inc. v. Philips Elec. N. Am. Corp.*,
92 F. Supp. 3d 982 (D. Haw. 2015) .........................................................................................6

*Mooney v. Harlin*,
622 S.W.2d 83 (Tex. 1981).......................................................................................................7

*Murray v. San Jacinto Agency, Inc.*,
800 S.W.2d 826 (Tex. 1990)...................................................................................................14

*Nationwide Bi-Weekly Admin., Inc. v. Belo Corp.*,
512 F.3d 137 (5th Cir. 2007) ....................................................................................................3

*Nelson v. Int'l Paint Co., Inc.*,
734 F.2d 1084 (5th Cir. 1984) ................................................................................................19

*Norwood v. Raytheon Co.*,
501 F. Supp. 2d 836 (W.D. Tex. 2006)...................................................................................10

*Opternative, Inc. v. Jand, Inc.*,
No. 17 CIV. 6936 (JFK), 2018 WL 3747171 (S.D.N.Y. Aug. 7, 2018).................................18

*OptoLum, Inc. v. Cree, Inc.*,
244 F. Supp. 3d 1005 (D. Ariz. 2017) ...............................................................................15–16

**TABLE OF AUTHORITIES**
**(Continued)**

**Page(s)**

*RBH Energy, LLC v. Brown*
    No. 3:16-CV-0830-G, 2016 WL 8465805 (N.D. Tex. Dec. 16, 2016)..............................19–20

*Reaux Med. Indus., LLC v. Stryker Corp.*,
    No. 3:09-CV-01582-M, 2012 WL 612534 (N.D. Tex. Feb. 27, 2012).......................................3

*Seatrax, Inc. v. Sonbeck Int'l, Inc.*,
    200 F.3d 358 (5th Cir. 2000) ............................................................................................4, 12

*Shell Oil Co. v. Ross*,
    356 S.W.3d 924 (Tex. 2011)..................................................................................................14

*Sparling v. Doyle*,
    No. EP-13-CV-00323-DCG, 2014 WL 12489986 (W.D. Tex. July 10, 2014) ......................20

*StoneCoat of Texas, LLC v. ProCal Stone Design, LLC*,
    No. 4:17CV303, 2019 WL 4346538 (E.D. Tex. Sept. 12, 2019) .............................................3

*Tavory v. NTP, Inc.*,
    297 F. App'x 976 (Fed. Cir. 2008) .......................................................................................16

*Tegal Corp. v. Tokyo Electron Co., Ltd.*,
    248 F.3d 1376 (Fed. Cir. 2001)............................................................................................19

*Trovan, Ltd. v. Sokymat SA, Irori*,
    299 F.3d 1292 (Fed. Cir. 2002)............................................................................................18

*Ultra-Precision Mfg., Ltd. v. Ford Motor Co.*,
    411 F.3d 1369 (Fed. Cir. 2005)............................................................................................15

*Univ. of Colo. Found., Inc. v. Am. Cyanamid Co.*,
    196 F.3d 1366 (Fed. Cir. 1999)............................................................................................15

*Wang v. Palo Alto Networks, Inc.*,
    No. C 121-05579WHA, 2014 WL 1410346 (N.D. Cal. Apr. 11, 2014)...............................4, 7

*WesternGeco v. Ion Geophysical Corp.*,
    No. 09-cv-1827, 2009 WL 3497123 (S.D. Tex. Oct. 28, 2009) ...............................................7

## TABLE OF AUTHORITIES
### (Continued)

**Page(s)**

STATUTES

18 U.S.C. § 1836 ............................................................................................................3

35 U.S.C. § 262 ........................................................................................................16–17

Defend Trade Secrets Act ("DTSA") .....................................................................3, 6

Tex. Civ. Prac. & Rem. Code Ann. § 16.003 ...........................................................13

Tex. Civ. Prac. & Rem. Code Ann. § 16.010(a) ........................................................3

Tex. Civ. Prac. & Rem. Code Ann. § 16.010(b) ........................................................4

Tex. Civ. Prac. & Rem. Code Ann. § 134A.007 ......................................................13

Texas Uniform Trade Secrets Act ("TUTSA") .................................................3, 6, 12

RULES

Fed. R. Civ. P. 9(b) .....................................................................................................10

Fed. R. Civ. P. 12(b)(6) .........................................................................................1–3, 18

Fed. R. Civ. P. 15(a)(2) ...............................................................................................19

OTHER AUTHORITIES

Wright & Miller, 5B Fed. Prac. & Proc. Civ. § 1357 (3d ed. 2019) ..............................3

Defendants Eaton Corporation and Cooper Lighting Solutions ("Cooper Lighting") move pursuant to Fed. R. Civ. P. 12(b)(6) to dismiss Counts II–XXXIV of Plaintiffs' First Amended Complaint ("FAC") as time-barred for again failing to state a claim and to dismiss Eaton Corporation as an improper party to this action.

While Plaintiffs added a multitude of self-serving statements and allegations in their FAC, Plaintiffs cannot avoid the fact that all counts revolve around the same set of facts: a short-lived and failed joint venture in the summer of 2011 between Plaintiff John Johnston, his company ProTerra, and Ephesus, a company later acquired by Cooper Lighting.  According to the FAC, this failed venture lays the foundation for Plaintiffs' claims of trade secret misappropriation under the federal and state trade secret statutes and Texas common law, correction of patent inventorship, unjust enrichment, money had and received, and fraudulent concealment.  Yet despite 79 pages and 343 paragraphs of accusations, and two attempts to get it right, the FAC remains devoid of the facts necessary to plead these causes of action under the *Twombly/Iqbal* standard—even after Defendants identified these exact deficiencies in their original motion to dismiss.  And even more fatal to Plaintiffs' case is the admitted facts outlined in both complaints create an incurable timeline of events establishing that the misappropriation and other tort-based claims were time-barred long before this case was filed.  *See* App'x A (redline comparison of FAC to original complaint).

Try as it might, the FAC's new allegations to toll the limitations clock cannot save Plaintiffs' time-barred claims—Plaintiffs' simply cannot un-ring that bell.  Self-serving statements that Johnston was "unaware" until late 2017–19 that Ephesus's issued patents misappropriated Johnston's "LED technology," and that Johnston had "no reason to suspect" any misappropriation, are belied by numerous other admitted facts establishing that Johnston had actual, inquiry, and constructive notice of the alleged misappropriation as early as 2011–15, that the causes of action

-1-

were reasonably discoverable at any time after the venture failed in 2011. Plaintiffs' new and thinly-veiled fraudulent concealment accusation is likewise undermined—according to the FAC, reliance was unreasonable, and any alleged deception was discoverable by reasonable diligence. In any event, delaying the limitations clock until Johnston was aware of Ephesus's issued patents is a non-starter because the facts as-pleaded tell a different story—and make it clear that Johnston had inquiry and constructive notice long before the statute of limitations ran in 2017.

The FAC further alleges that Johnston invented some "LED technology" in 2011 and should thus now be named an inventor on 28 Cooper Lighting patents assigned to Cooper Lighting Solutions. Yet Plaintiffs identify only one claim in each patent to which Johnston allegedly contributed. Having again failed to map the inventive steps or contributions to all claims of all disputed patents, Plaintiffs cannot adequately allege that Johnston is a sole inventor of any of the identified Cooper Lighting patents.

Given Plaintiffs' failure to adequately allege trade secret misappropriation, unjust enrichment, money had and received, fraudulent concealment counts (XXXI–XXXIV), and sole inventorship (in counts II–XXX), despite a previous opportunity to amend and knowledge of the prior complaint's deficiencies, these allegations should be dismissed with prejudice.

## I.   LEGAL STANDARD

A Rule 12(b)(6) motion to dismiss for failure to state a claim tests the legal sufficiency of a complaint. To survive a Rule 12(b)(6) motion, the complaint must provide fair notice and allege facts that, if true, "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). The complaint must contain "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id.* at 555. Legal conclusions, "threadbare recitals of the elements of a cause of action," and a "formulated recitation of the elements" do not suffice. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

## II.     ARGUMENT

### A.     The Trade Secret Misappropriation Count (XXXI) Is Barred by the Statutes of Limitations and Should Be Dismissed with Prejudice.

Johnston's own allegations of trade secret misappropriation are fatal to that cause of action and his new allegations that he never assigned his trade secrets to his company ProTerra are of no import.  The FAC acts as a roadmap identifying multiple events in 2011 and 2014 that reasonably would have put Johnston on notice of any misappropriation and triggered the three-year statute of limitations.  Because these events occurred far more than three years before this action was filed, Johnston's misappropriation claim is time-barred as a matter of law.

Statutes of limitations "prevent the litigation of stale claims."  *Kerlin v. Sauceda*, 263 S.W.3d 920, 925 (Tex. 2008).  A statute of limitations defense may be properly asserted in a Rule 12(b)(6) motion to dismiss when, as here, the complaint lays out the basis for the defense. *See Nationwide Bi-Weekly Admin., Inc. v. Belo Corp.*, 512 F.3d 137, 141 (5th Cir. 2007); *see also* Wright & Miller, 5B Fed. Prac. & Proc. Civ. § 1357 (3d ed. 2019).  Under the federal Defend Trade Secrets Act ("DTSA"), the Texas Uniform Trade Secret Acts ("TUTSA"), and Texas common law, a claim must be brought within three years after the misappropriation is "discovered or by the exercise of reasonable diligence should have been discovered."  18 U.S.C. § 1836 (DTSA); Tex. Civ. Prac. & Rem. Code Ann. § 16.010(a) (TUTSA).[1]  "A misappropriation of trade secrets that continues over time is a single cause of action and the limitations period begins running

---

[1]TUTSA displaced the Texas common law effective September 1, 2013, but for events occurring before this date, such as those alleged here, the common law three-year statute of limitations applies.  *See, e.g., StoneCoat of Texas, LLC v. ProCal Stone Design, LLC*, No. 4:17CV303, 2019 WL 4346538, at *14 (E.D. Tex. Sept. 12, 2019) (citing cases explaining TUTSA's displacement of common law); *Reaux Med. Indus., LLC v. Stryker Corp.*, No. 3:09-CV-01582-M, 2012 WL 612534, at *2 (N.D. Tex. Feb. 27, 2012) (discussing three-year common law statute of limitations).

without regard to whether the misappropriation is a single or continuing act."  Tex. Civ. Prac. & Rem. Code Ann. § 16.010(b).

The limitations period begins to run when the plaintiff has actual or constructive knowledge of facts underlying the misappropriation claim.  *See, e.g.*, *J.M. Huber Corp. v. Positive Action Tool of Ohio Co.*, 879 F. Supp. 705, 708 (S.D. Tex. 1995) ("The statute of limitations begins to run . . . when the wrongful conduct (the misappropriation) occurs and when a party either discovers the misappropriation or has sufficient facts to require an investigation into whether a misappropriation occurred." (citations omitted)); *Seatrax, Inc. v. Sonbeck Int'l, Inc.*, 200 F.3d 358, 365 (5th Cir. 2000) (citing cases).  Once a plaintiff has reason to suspect a misappropriation, the limitations period begins regardless of whether the plaintiff investigated.  *See J.M. Huber*, 879 F. Supp. at 708.

**1.      Johnston was on inquiry notice of the alleged misappropriation no later than 2013, when he believed that Ephesus had not returned confidential information pursuant to the ProTerra-Ephesus NDA.**

Courts have consistently found that a failure to return confidential information as required by an NDA constitutes inquiry notice sufficient to start the running of the statute of limitations of trade secret misappropriation.  For example, in *Wang v. Palo Alto Networks, Inc.*, No. C 121-05579WHA, 2014 WL 1410346, at *7 (N.D. Cal. Apr. 11, 2014), the court held that the failure to return confidential information as required by a confidentiality agreement placed the disclosing party on inquiry notice of potential misappropriation, triggering the running of the statute of limitations.  Dismissing Wang's trade secret claim as time-barred, Judge Alsup reasoned:

> Gong breached the non-disclosure agreement when he violated his agreement to return the documents containing Wang's alleged trade secrets.  This is undisputed. . . .  Wang knew that Gong had never asked for relief from his duty to return the trade secrets.  This violation involving the trade secrets put Wang on inquiry notice.

*Id.*

*Alta Devices, Inc. v. LG Elecs., Inc.*, No. 18-CV-00404-LHK, 2019 WL 1924992 (N.D. Cal. Apr. 30, 2019), stands for the same principle.  There, the parties signed an NDA in 2011 that required the return of confidential information upon the earlier of the expiration of the agreement in 2012 or the disclosing party's request.  LGE received confidential information from Alta, declined to invest in Alta, and soon thereafter began producing and marketing competing products. Four years after the agreement expired, Alta requested return of its confidential information, and LGE refused.  In 2018, Alta sued LGE for trade secret misappropriation.  Endorsing *Wang*'s reasoning, the court held that, because the NDA required that confidential information be returned upon the expiration of the agreement, Alta was on inquiry notice of a potential misappropriation when LGE failed to return its confidential information in 2012.  *Id.* at *13–14.  Alta's misappropriation claim was therefore time-barred as a matter of law.

The situation here is the same.  The April 2011 NDA between Johnston, ProTerra and Ephesus included a "Return of Confidential Information" provision, which read:

> Upon the termination of this Agreement, **or** at either party's request, the party in receipt of any Confidential Information shall, on request, deliver to the Disclosing Party all files, documents, computer programs and other media (and all copies and reproductions of any of the foregoing) in its possession or control to the extent the same contain Confidential Information.

FAC Ex. 25 (emphasis added).  The companies' joint venture efforts failed just a few months later, in July/August 2011.  FAC ¶¶ 72–73.  The FAC alleges that at that time, "[d]espite being asked by Johnston and ProTerra numerous times . . . Ephesus Technologies refused to return the confidential prototype lights they had acquired from Johnston and ProTerra under the NDA prior to the split." *Id.* ¶ 74.  Johnston further admits that he suspected at that time that Ephesus had "no intention of giving back … the LED product samples and confidential information" and that Ephesus did not "have any intention of ceasing their ongoing work in the development, manufacture, and selling

of LED lighting products that were based on Johnston's LED technology, including his confidential information and Trade Secrets." *Id.* ¶ 75.

Thus, regardless of which entity "owned" the trade secrets, the FAC's own allegations establish that Johnston and ProTerra knew about the alleged breach of the confidential relationship: Johnston/ProTerra proposed, negotiated, and signed the NDA, *see id.* ¶¶ 52–53, Ephesus signed it at Johnston/ProTerra's request, *see id.* ¶ 54, and Johnston/ProTerra provided Johnston's patent application and other technical documents to Ephesus pursuant to the NDA, *see id.* ¶¶ 54–56, 58–63, 65–66, 69. By August 2011, when requests by Johnston/ProTerra for return of the confidential information (including Johnston's purported trade secrets) were allegedly ignored, Johnston and ProTerra were on notice of circumstances that would have led a prudent person to investigate possible misappropriation.[2] This inquiry notice started the clock for Johnston's claim. *See, e.g.*, *Moddha Interactive, Inc. v. Philips Elec. N. Am. Corp.*, 92 F. Supp. 3d 982, 992–94 (D. Haw. 2015), *aff'd*, 654 F. App'x 484 (Fed. Cir. 2016) (trade secret misappropriation claim time-barred and dismissed without leave to amend because failure to return confidential information breached NDA and triggered the limitations clock).

Because Johnston alleges a breach of an NDA that occurred more than three years before the original complaint was filed, his misappropriation claim is time-barred under DTSA, TUTSA, and/or Texas common law. Count XXXI should be dismissed with prejudice.

> ### 2. Johnston was on constructive notice of the alleged misappropriation in 2014 when Ephesus's patent application published.

Johnston also had constructive notice of Ephesus's alleged misappropriation by the time Ephesus's patent application was published and became available to Johnston, ProTerra, and the

---

[2]In addition, the NDA expired in April 2013, triggering Ephesus's duty to return Confidential Information even if Johnston or ProTerra had not asked for it earlier. *See* Compl. ¶ 75 & Ex. 25. According to the FAC, Ephesus still did not return the Confidential Information.

general public.  Courts regularly find that published patent applications trigger constructive notice

of the need to investigate a potential misappropriation.

In *WesternGeco v. Ion Geophysical Corp.,* No. 09-cv-1827, 2009 WL 3497123, at *4–5

(S.D. Tex. Oct. 28, 2009), for example, the court held that a breach-of-contract claim was time-

barred because publication of the patent application constituted constructive notice and triggered

the statute of limitations clock.  The court reasoned:

> A person is charged with constructive notice of the actual know-
> ledge that could have been acquired by examining public
> records. . . . [T]he issuance of a patent by the PTO constitutes notice
> to the entire world of its existence, regardless of whether other
> persons take it upon themselves to examine the records, [as] do the
> applications published . . . constitute notice to the world of their
> existence . . . .

*Id.* at *4–5.  The same rule applies to published PCT applications.  *Id.* at *5.  Similarly, in *Alamar*

*Biosciences, Inc. v. Difco Labs., Inc.*, No. Civ-S-941856 DFL PAN, 1995 WL 912345, at *4–6

(E.D. Cal. Oct. 13, 1995), the court held that a trade secret misappropriation claim was time-barred

because the plaintiff "strongly suspected" that its confidential information was misappropriated,

and a basic search would have quickly revealed the patent application.  Likewise, in *Wang*, 2014

WL 1410346, at *6, further support for dismissal was that "an inventor actively practicing in the

field and prosecuting his own patent application must be deemed to be on constructive notice of

published patent applications in the same field."  Moreover, under Texas law, "a person is charged

with constructive notice of the actual knowledge that could have been acquired by examining

public records."  *Mooney v. Harlin*, 622 S.W.2d 83, 85 (Tex. 1981).

Here, Johnston, an alleged inventor, actively prosecuted his patent application directed to

LED-related inventions between 2009 and 2012, when his patent issued.  FAC ¶ 42.  Johnston also

admits that he and others at ProTerra were concerned about Ephesus's alleged failure to return

Johnston/ProTerra's confidential information, including Johnston/ProTerra's unpublished patent

application, after the joint business venture failed.  *See id.* ¶¶ 61–62.  Yet a simple search of the U.S. Patent and Trademark Office ("USPTO") database using search terms such as "Ephesus" or "Joseph Casper" (the Ephesus CEO with whom Johnston worked during the short-lived venture) would have quickly revealed Ephesus's PCT application, published on June 20, 2013, and Ephesus's U.S. patent application, published on November 13, 2014.  Other search terms related to LED technology would also have apprised Johnston of Ephesus's patent publication.  Had Johnston conducted such a simple search, he would have found that Ephesus's application covered "inventive concepts in the claims" that Ephesus allegedly "lured away from Johnston and ProTerra under the NDA."  *Id.* ¶¶ 79, 96.  Indeed, had Johnston looked at the face of Ephesus's published application, he would have found what he now alleges to be an "obvious copy of a ProTerra assembly drawing that ProTerra provided to Ephesus Technologies under the NDA in June 2011." *Id.* ¶ 96.

Johnston now belatedly alleges that he "had no reason to suspect that Ephesus Technologies had misappropriated his Trade Secrets back in 2011."  *Id.* ¶ 87.  And that he "had no reason to suspect that Ephesus Technologies had filed a patent application on his technology in 2011."  *Id.*  Nor did he have any reason "to search for any published patent applications owned by Ephesus Lighting (nor would such a search have uncovered any published U.S. patent applications owned by Ephesus Lighting at that time."  *Id.*  Here, "a reasonable plaintiff is required to take the elementary step of checking all readily available patent applications."  *Alamar*, 1995 WL 912345, at *5.  The FAC admits that Johnston suspected something was amiss—*see, e.g.*, FAC ¶¶ 73 ("clear attempt to cover up"), 74 ("particularly confusing"), 76 ("refuted by a number of subsequent email exchanges"), 77 ("Casper's . . . mischaracterizing . . . would become even more apparent a month later" regarding "false[] claim[]" of not having signed NDA)—and a basic search would have

revealed the published PCT and U.S. patent applications now alleged to be "an obvious copy" of Johnston's trade secrets. Johnston was therefore on constructive notice of the misappropriation at least as of 2014—more than three years before Plaintiffs brought this claim. The claim is time-barred.

> ### 3. Johnston had actual notice of the alleged misappropriation in 2014 when he sent a cease-and-desist letter to Ephesus seeking an "equitable arrangement" for its use of his alleged proprietary LED technology.

Johnston's cease-and-desist letter to Ephesus Lighting's CEO on July 15, 2014 establishes he had actual notice of the alleged misappropriation at least five years before he brought this case. According to the FAC, "Johnston sent a letter to the then-President of Ephesus Lighting, Michael Lorenz, and put Ephesus Lighting on notice that its products infringed Johnston's [U.S.] Patent." FAC ¶ 87; *see also* Ex. 54 (Johnston/ProTerra letter alleging, in part, that "Ephesus has incorporated these same [ProTerra patent-pending] LED technologies and designs in their products").

Despite the FAC's new and self-serving allegations that Johnston was "unaware" of Ephesus's LED intellectual property, *see* FAC ¶¶ 82, 84–85, 92–94, 97–98, 100, Johnston cannot credibly argue that when he investigated Ephesus's alleged patent infringement in 2014, he did not also discover Ephesus's use of his alleged trade secrets—the trade secret and patent infringement claims involve the same set of facts. Johnston himself must have undertaken a detailed technical review of the Ephesus products, *see* Ex. 54 (Johnston's letterhead) to conclude that Ephesus's products infringed his patent, *see* FAC ¶ 87. In fact, Johnston specifically identified the misappropriation: "Ephesus has incorporated these same LED technologies and designs [as in Johnston's patent] into their products." Ex. 54 (emphasis added). Johnston also showed appreciation of the alleged misappropriation because "Ephesus Technologies could not have legally developed its own purported proprietary LED lighting product and technology in just a few

months' time."  FAC ¶ 78; *cf. Maatuk v. Emerson Elec., Inc.*, 781 F. App'x 1002, 1005 (Fed. Cir. 2019) (affirming that trade secret misappropriation was time-barred because the plaintiff was "cognizant of a breach in the confidential disclosure agreement" when he sent a cease and desist letter sent to the defendant "well outside the . . . statutory period").  And by 2014, Johnston showed appreciation of a possible cause of action by requesting the parties "work out a fair and equitable arrangement."  Ex. 54.

Accepting the FAC's factual allegations as true and drawing all inferences in Plaintiffs' favor, Johnston was on inquiry, constructive, and actual notice of the alleged misappropriation of trade secrets long before the critical date of November 12, 2016. The misappropriation claim is accordingly time-barred and should be dismissed with prejudice.

### B.     The Fraudulent Concealment Count (XXXIV) Should Be Dismissed As Time-Barred.

Johnston's newfound allegation that fraudulent concealment tolls the statute of limitations contradicts the facts as pled and falls far short of Rule 9's heightened pleading standard.[3] Fraudulent concealment tolls a statute of limitations where (1) there is an underlying tort, (2) the defendant has knowledge of the tort, (3) the defendant used deception to conceal the tort, and (4) the plaintiff reasonably relied on that deception.  *Hernandez v. Frazier*, No. SA-11-CA-9-FB, 2012 WL 12896913, at *17 (W.D. Tex. Jan. 26, 2012) (citation omitted).  But the statute of

---

[3]The fraudulent concealment count should additionally be dismissed for failure to state a claim under Rule 9(b), which imposes heightened pleading requirements for allegations of fraud.  "[T]he complaint must set forth a factual basis for such belief," meaning that the complaint must "plead scienter adequately," i.e., "set[] forth specific facts that make it reasonable to believe that defendant knew that a statement was materially false or misleading."  *Norwood v. Raytheon Co.*, 501 F. Supp. 2d 836, 838–39 (W.D. Tex. 2006) (citations and internal quotation marks omitted).  For example, patent applications filed with the USPTO are not "covertly file[d]," and well-publicized Super Bowl LED lighting projects are likewise public, not "covertly secure[d]."  *See* FAC ¶ 341.  Nor did the FAC allege how a statement regarding one of Ephesus's projects, a "wind turbine program" in which "Lockheed Martin [was] very excited," was intended to prevent Plaintiffs from discovering Ephesus's public uses of LED technology.  *See id.* ¶ 340.  Accordingly, Count XXXIV should be also dismissed under Rule 9(b).

limitations is **_only_** tolled until "the fraud is discovered or *could have been discovered with reasonable diligence*." *See, e.g.*, *Adams v. Nissan N. Am., Inc.*, 395 F. Supp. 3d 838, 847 (S.D. Tex. 2018) (emphasis added).   Tolling is inappropriate because Johnston "could have . . . discovered [the alleged misappropriation] with reasonable diligence." *See, e.g.*, *Hernandez*, 2012 WL 12896913, at *17, *see also Acad. of Allergy and Asthma v. Quest Diagnostics Inc*., No. 5:17-1295, 2019 WL 919203 (W.D. Tex. Feb. 2, 2019) (granting motion to dismiss trade secret misappropriation action as time-barred and finding pleadings failed to raise a basis for tolling.) There cannot be fraudulent concealment when, as here, the plaintiff admittedly knew of or could have discovered the alleged fraud through the exercise of reasonable diligence.

According to the pleaded facts, Johnston was immediately suspicious of Ephesus's intentions.  For example, in September 2011 shortly after the dissolution, ProTerra's President and CEO, Johnston and Shan Jamal, both emailed Ephesus threatening to "initiate litigation for damages from your actions." *See* Ex. 48; *see also* FAC ¶¶ 76 (Ephesus's August 2011 statements "refuted by a number of subsequent email exchanges"), 77 (Ephesus mischaracterization "would become even more apparent a month later"), Ex. 47 (itemization of alleged "harm to ProTerra" and threat of litigation).  Indeed, the emails threatened more than $39 million in damages and suggested the parties "sign an agreement to release each other party from any and all financial costs caused in a failed attempt to establish a joint-venture… [and] all harmful actions carried out by Ephesus against ProTerra thereafter."   *See* Ex. 47.   At least by September 2011, Johnston/ProTerra should have investigated whether any trade secret misappropriation had occurred—failure to do so was unreasonable.  Second, Ephesus's patent applications were not "covertly file[d]," *see* FAC ¶ 341—they were provided to the USPTO and subsequently published, publicly available in 2014, and easily discoverable had Johnston/ ProTerra conducted even a basic

search.  *See supra* Section II.A.2.  Third, Ephesus's acquisition of commercial contracts was likewise not "covert[]."  *See* FAC ¶ 341.  These were not miniscule microchip transistors requiring expensive reverse engineering—they were large-scale, first-of-their-kind, well-publicized LEDs openly and visibly installed in university, NHL, and NFL stadiums (including the LEDs used in four of the last six Super Bowls).  *See, e.g.*, *id.* ¶¶ 86, 88–89, 99, 101, 103.  Indeed, Plaintiffs' own exhibits highlight public news coverage, as early as July 2012, of Ephesus's LED stadium lighting being installed at the Onondaga County War Memorial arena located *across the street from Ephesus and Johnston/ProTerra's offices at Syracuse Tech Garden* in downtown Syracuse. *See id.* ¶ 80; *see also id.* ¶¶ 86, 88–89, 99, 101–03; Exs. 49–53, 55–60.  This hardly qualifies as "covert" as Johnston now alleges.

It is well established that a party's ignorance of material facts or lack of knowledge will not toll a statute of limitations. *Seatrax*, 200 F.3d at 365.  Plaintiffs' attempt to start the clock in 2017 when Johnston supposedly became aware of Ephesus's patent (only because he was "sent a copy," *see* FAC ¶ 342) blatantly ignores the well-established "discovery rule" and contradicts the factual story as outlined in the FAC.  Plaintiffs' trade secret misappropriation claim (Count XXXIV) must be dismissed for failure to state a claim.

C. **The Unjust Enrichment and Money Had & Received Counts (XXXII and XXXIII) Should Be Dismissed as Time-Barred, Preempted, and For Failing to State a Claim.**

Count XXXII (Unjust Enrichment) and Count XXXIII (Money Had and Received) are barred by the two-year statute of limitations because they accrued before November 12, 2017, and additionally barred as preempted by federal patent law.[4]  Moreover, even if Plaintiffs could overcome those hurdles, these Counts do not satisfy *Twombly/Iqbal*.

---

[4]To the extent Plaintiffs intend the Unjust Enrichment and Money Had and Received claims (Counts XXXII–XXXIII) to rely on trade secret misappropriation, they would also be preempted by TUTSA which

### 1.    These claims are barred by the statute of limitations.

The unjust enrichment and money had and received counts are both subject to a two-year statute of limitations.  *See Autry v. Dearman*, 933 S.W.2d 182, 190 n.7 (Tex. App. 14th 1996) (citing cases); *Elledge v. Friberg-Cooper Water Supply Corp.*, 240 S.W.3d 869, 870 (Tex. 2007) (unjust enrichment); Tex. Civ. Prac. & Rem. Code Ann. § 16.003.  Under the "legal injury" test, Plaintiffs' claims accrued "'when facts c[a]me into existence that authorize[d Plaintiffs] to seek a judicial remedy."  *See, e.g.*, *Mayo v. Hartford Life Ins. Co.*, 354 F.3d 400, 410 (5th Cir. 2004).

Plaintiffs assert unjust enrichment on the theory that Johnston provided "inventions and inventive contributions" to Ephesus, Defendants patented LED-related inventions without naming Johnston as an inventor, and as a result Defendants obtained benefits that Johnston did not enjoy, *see* FAC ¶¶ 323–31, including not crediting or compensating Johnston for his inventive contributions and for saving Defendants' LED sports lighting business the "time and resources" of "years of research and development, *see id.* ¶ 104.  Relatedly, Plaintiffs hinge their money-had-and-received claim on the alleged "patenting [of] Johnston's inventions and inventive contributions without naming Johnston as an inventor," which allegedly provided Defendants "good will, the ability to license the subject matter, improvement to their reputation in the LED lighting industry, and the ability to attract investors and business partners."  *Id.* ¶ 326.

As explained above in Section II.A, regardless of whether Johnston had actual knowledge, the FAC's allegations reveal that Johnston had at least inquiry and constructive knowledge more than two years before filing the original complaint.  Based on 2011–13 events, Johnston had inquiry notice after he provided LED information and samples, the NDA expired and Ephesus did not return confidential information to Johnston, and Ephesus filed its first patent applications.

---

"displace[d]" conflicting tort, restitution, and other Texas law civil remedies.  Tex. Civ. Prac. & Rem. Code Ann. § 134A.007.

FAC ¶¶ 46–75 & Ex. 4 at 1 (citing provisional patent application No. 61/570,072, filed on Dec. 13, 2011).  Plaintiffs had constructive notice no later than August 2011, when Ephesus completed a New York lighting project funded by NYSERDA, a target of the previous ProTerra-Ephesus joint venture, *see id.* ¶ 79; Ex. 47–49—indeed, this supposed "head-start" in LED technology, *see* FAC ¶ 104, was publicly known and well-documented since August 2011, *see id.* ¶¶ 79–81, 86, 88–89, 99, 101–03 (Ephesus' publicized lighting products).  Plaintiffs also had constructive notice as of Johnston's July 15, 2014 letter to Ephesus that highlighted Johnston's provision of "LED knowledge and technology," Defendants' "LED technologies and designs in their products," and Johnston's desire for "a fair and equitable arrangement" between the parties.  *See id.* ¶ 87; Ex. 54.[5]

The FAC does not overcome the two-year time-bar.  Even if, as newly alleged, "most of the Cooper Patents-in-Suit issued less than two years before his lawsuit was filed," *see* FAC ¶¶ 329, 335, the statute of limitations is not reset for every patent that issued.  "The fact that damage may continue to occur for an extended period . . . does not prevent limitations from starting to run.  Limitations commences when the wrongful act occurs resulting in some damage to the plaintiff." *Murray v. San Jacinto Agency, Inc.*, 800 S.W.2d 826, 828 (Tex. 1990); *cf. Mayo*, 354 F.3d at 410.  Moreover, the FAC alleges no tolling for these counts under the discovery rule, which would require "inherently undiscoverable" violations.  *See Shell Oil Co. v. Ross*, 356 S.W.3d 924, 930 (Tex. 2011).[6]  Nor could it, given Ephesus's public patenting of LED technology and numerous high-profile LED lighting installations.  And in any event, tolling would not apply for the reasons discussed above: at least Defendants' published patents and patent applications constituted

---

[5] Even if Johnston's claim did not accrue until November 17, 2015, when the first two disputed patents issued, *see id.* ¶ 91; *Barnett v. Surefire Med., Inc.*, 342 F. Supp. 3d 1167, 1176–77 (D. Colo. 2018) (plaintiff knew or should have known of unjust enrichment claim by time of patent's issuance), that occurred well over two years before this suit was filed.

[6] To the extent Plaintiffs intend to rely on Fraudulent Concealment—which was not alleged for Unjust Enrichment or Money Had and Received—Defendants incorporate Section II.B, *supra*.

constructive notice of the facts underlying the unjust enrichment and money had and received claims, Johnston held a patent in the same technological area of LED lighting, *see* FAC ¶¶ 10, 43, 87; Ex. 54, and Johnston had actual notice of Ephesus's LED technology and a stated desire to "work out a fair and equitable arrangement" no later than July 15, 2014, *see id.* ¶ 87, Ex. 54. Counts XXXII and XXXIII are therefore time-barred and should be dismissed with prejudice.

### 2.   Federal patent law preempts both claims as-pleaded.

Under the Supremacy Clause, "federal patent law preempts any state law that purports to define rights based on inventorship." *Univ. of Colo. Found., Inc. v. Am. Cyanamid Co.*, 196 F.3d 1366, 1372 (Fed. Cir. 1999).  The focus is not merely on elements of the stated cause of action, but rather the specific claims as pled in the FAC.  *See, e.g.*, *Ultra-Precision Mfg., Ltd. v. Ford Motor Co.*, 411 F.3d 1369, 1378 (Fed. Cir. 2005) ("[T]he question presented . . . is whether permitting a court to entertain the specific unjust enrichment claim pled by Ultra–Precision . . . 'stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress' and is thus preempted."); *see also, e.g.*, *OptoLum, Inc. v. Cree, Inc.*, 244 F. Supp. 3d 1005, 1014–15 (D. Ariz. 2017) (unjust enrichment preempted because "resolution of [the] unjust enrichment claim, as pled in the amended complaint, is based in part on a determination of inventorship" and related reputational harm); *James v. J2 Cloud Servs. Inc.*, No. 2:16-CV-05769-CAS(PJWx), 2018 WL 6092461, at *5 (C.D. Cal. Nov. 19, 2018) (unjust enrichment preempted "as pleaded").

Federal patent law—specifically Johnston's alleged inventorship—is essential to Counts XXXII and XXXIII.  The FAC alleges:

> By patenting *Johnston's confidential inventions* and inventive contributions *without naming Johnston as an inventor* on such patents and by *misusing Johnston's confidential inventions* and inventive contributions to obtain ownership of the Cooper Patents-In-Suit, upon information and belief, Defendants have gained

numerous benefits, such as good will, the ability to license the claimed subject matter, improvement to their reputation in the LED lighting industry, and the ability to attract investors and business partners.

FAC ¶¶ 326 (unjust enrichment), 334 (money had and received) (emphases added); *see also* ¶¶ 327–31 (similar, focusing on "patenting" "Johnston's confidential inventions and inventive contributions without naming Johnston as an inventor on such patents" and "misusing Johnston's confidential inventions and inventive contributions to obtain" patents).  The counts allege no harm distinct from Johnston's alleged inventorship of the disputed patents/Johnston's alleged inventions and the benefits resultingly conferred on Eaton.  *See generally* ¶¶ 323–36.

Here, patent law preempts the claim because "[a]t the heart of [plaintiffs'] unjust enrichment claim is the issue of *who invented* 'the [LED] technology.'"  *OptoLum, Inc.*, 244 F. Supp. 3d  at 1014 ("If [plaintiff] did not invent the LED technology at issue here, the unjust enrichment claim fails because [defendant] could not have unjustly appropriated from [defendant] the reputation for having invented the technology." (internal citations omitted)).

Furthermore, even if Johnston were named a co-inventor under Counts II–XXX, federal law would preempt any state law entitlement to patent-related revenues because Section 262 of the Patent Act permits each joint owner to practice or license inventions free from any obligation to account to its co-owners.  *See* 35 U.S.C. § 262.  For example, in *Tavory v. NTP*, an alleged inventor sought "his share of monies . . . from the licensing and enforcement of the patents-in-suit . . . which he [was] allegedly entitled to due to his contribution to the conception of the invention claimed in those patents, i.e., because he is the co-inventor of those patents."  297 F. App'x 976, 982 (Fed. Cir. 2008).  The Federal Circuit held that the plaintiff was not entitled to "any portion of the revenues" and that his state-law claim was preempted as an improper "sidestep[ping]" of patent law and an "obstacle" to 35 U.S.C. § 262.  *Id.* at 982–83; *accord Ethox Chem., LLC v. Coca-Cola*

*Co.*, No. CV 6:12-1682-KFM, 2015 WL 12807724, at *6 (D.S.C. Mar. 3, 2015), *aff'd sub nom.*

*Ethox Chems. LLC v. Coca-Cola Co.*, 683 F. App'x 958 (Fed. Cir. 2017).

Thus, Counts XXXII and XXXIII are additionally preempted by federal patent law.

**3.      Alternatively, the FAC fails to state a claim on the merits.**

Even if these counts were neither time-barred nor preempted, the FAC must "state a claim

to relief that is plausible on its face" and go beyond "conclusory statements" and "[t]hreadbare

recitals of the legal elements." *Twombly*, 550 U.S. at 570; *Iqbal*, 556 U.S. at 678.  The FAC does

not.

A claim for unjust enrichment requires facts showing that the Defendants "wrongfully

secured a benefit or . . . passively received one which it would be unconscionable to retain." *City

of Corpus Christi v. S.S. Smith & Sons Masonry, Inc.*, 736 S.W.2d 247, 250 (Tex. Ct. App. 1987).

A claim for money had and received requires facts showing that Defendants hold money that "in

equity and good conscience" belongs to Johnston, and that Johnston has an "ownership interest"

in the money.  *See, e.g.*, *Miller-Rogaska, Inc. v. Bank One, Tex., N.A.*, 931 S.W.2d 655, 662–63

(Tex. Ct. App. 1996).

Despite being notified of these deficiencies, the new FAC fails to allege any such facts.

For example, it alleges no monetary amount "unconscionabl[y]" held by Defendants.  Count

XXXII's "value that Defendants have unjustly obtained," FAC ¶ 331, and Count XXXIII's

"restitution of money had and received" because "Defendants hold money . . . that in equity and

good conscience belongs to Plaintiffs," *id.* ¶¶ 333, 336, are mere "threadbare recitals," *see Iqbal*,

556 U.S. at 678.  The FAC fails to explain how Johnston is due any amount "in equity and good

conscience"—especially in light of 35 U.S.C. § 262.  It also does not allege that Plaintiffs have

any "ownership interest" in any prior contract, assignment, licensing, or other values.  Indeed, its

limited allegations pertaining to value are—just as in the original complaint—the vague "value of

-17-

the inventions and inventive contributions and resulting patents." FAC ¶ 326; *see also id.* ¶ 331, Prayer for Relief (k); *cf.* ¶ 104 ("compensat[ion]" to Johnston and R&D costs).  This is not enough to prevent dismissal under Rule 12(b)(6).

### D.   The Correction of Inventorship Counts (II–XXX) Fail to State a Claim and Should Be Dismissed as to Sole Inventorship.

"[I]nventorship is determined on a claim-by-claim basis."  *Trovan, Ltd. v. Sokymat SA, Irori*, 299 F.3d 1292, 1302 (Fed. Cir. 2002).  Because "[t]he inventors as named in an issued patent are presumed to be correct," Plaintiffs bear the burden and must provide clear and convincing, corroborated evidence that the listed inventorship is improper.  *Eli Lilly & Co. v. Aradigm Corp.*, 376 F.3d 1352, 1358 (Fed. Cir. 2004); *see also Trovan*, 299 F.3d at 1301–02.  To be a sole inventor, the alleged inventor must have "conceived of the total patented invention" and "must show that [he] conceived of every claim of the patent and that any contribution by [the named inventors] to the conception of each and every claim was insignificant."  *Opternative, Inc. v. Jand, Inc.*, No. 17 Civ. 6936 (JFK), 2018 WL 3747171, at *8 (S.D.N.Y. Aug. 7, 2018) (citations omitted).

To the extent the FAC alleges sole inventorship, its allegations do not meet this standard. *See* FAC ¶¶ 115, 119, 129, 133, 136, 140, 143, 147, 150, 154, 157, 161, 164, 168, 171, 175, 178, 182, 185, 189, 192, 196, 199, 203, 206, 210, 213, 217, 220, 224, 227, 231, 234, 238, 241, 245, 248, 252, 255, 259, 262, 266, 269, 273, 276, 280, 283, 287, 290, 294, 297, 301, 304, 308, 311, 315.  More is required than a general allegation that Johnston invented "LED technology."  *See, e.g.*, *id.* ¶ 73.  The FAC never alleges that Johnston "conceived every element of every claim" of every disputed patent, as required.  *See CardiAQ Valve Techs., Inc. v. Neovasc, Inc.*, 57 F. Supp. 3d 118, 122 (D. Mass. 2014) (dismissing correction-of-inventorship counts for inadequate pleading).  Allegations that Johnston provided "most if not all of the inventive concepts in the claims," *see, e.g.*, *id.* ¶ 78, and "conceived in whole or in part of the invention claimed" including

"the entirety of at least [one claim]," *see, e.g.*, ¶ 115, fail to meet the required *Twombly/Iqbal* pleading standard of showing inventorship of the full scope of all claims of all disputed patents. Accordingly, Plaintiff's sole inventorship component of Counts II–XXX should be dismissed for failure to state a claim.

### E.      All Claims Against Eaton Corporation Should be Dismissed.

The FAC alleges that in March 2020, Eaton Corporation divested its interest in its wholly-owned subsidiary, Cooper Lighting.  *See* FAC ¶ 6 ("Cooper was a wholly-owned subsidiary of Eaton up until March 2, 2020"); *see also id.* ¶ 111 ("Cooper now owns the Ephesus [] business and substantially all of Ephesus[]'s assets and liabilities, and is therefore the current successor-in-interest for Ephesus.").  Accordingly, and to the extent Plaintiffs' claims cover present or future Ephesus conduct, Eaton Corporation plays no part.

Additionally, Plaintiffs fail to allege any *past* actionable conduct against Eaton Corporation.  In Count I, Plaintiffs assert that "Ephesus['s] . . . infringement [is] imputed to" Eaton Corporation, but Plaintiffs do not allege any fact justifying the imputation of liability on the parent of a subsidiary corporation.  *See Nelson v. Int'l Paint Co., Inc.*, 734 F.2d 1084, 1092–93 (5th Cir. 1984) (factors for determining whether to impute subsidiary liability upon a parent); *see also Tegal Corp. v. Tokyo Electron Co., Ltd.*, 248 F.3d 1376, 1379 (Fed. Cir. 2001) Plaintiffs' remaining claims implicating Eaton Corporation (Counts XXXI–XXXIV) fail for the reasons discussed in sections II.A–E, *supra*, but also fail because they are based on conclusory assertions and an unfounded imputation of liability.  *See Nelson*, 734 F.2d at 1092–93.  As a result, Plaintiffs fail to state a claim against Eaton Corporation which should be promptly dismissed from this case.

### F.      Further Amendments Would Be Futile and Should Be Denied.

Under Rule 15(a)(2), further amendments to the FAC would require leave of the Court. Fed. R. Civ. P. 15(a)(2).  In *RBH Energy, LLC v. Brown*, No. 3:16-CV-0830-G, 2016 WL 8465805,

at *2 (N.D. Tex. Dec. 16, 2016), the court found it futile to allow further amendment to the complaint—specifically, because the statute of limitations had run, the discovery rule was inapplicable, and the plaintiff failed to exercise reasonable diligence in investigating its claims of copyright infringement.   Because the plaintiff could have, "[w]ith minimal investigation . . . discovered . . . the infringement and timely filed suit against it . . . [the plaintiff] had reason to know [the infringement] and the limitations period began running on that day.   Furthermore, [plaintiff's] failure to exercise reasonable diligence" further weighed against additional amendments.  *Id.*; *cf. Sparling v. Doyle*, No. EP-13-CV-00323-DCG, 2014 WL 12489986, at *2–3 (W.D. Tex. July 10, 2014) (denying leave to amend to the extent certain claims could not be facially asserted under the two-year statute of limitations).

Given that Plaintiffs have failed to cure the original complaint's deficiencies, despite the benefit of Defendants' original motion to dismiss, and because further amendment would be futile given the facts allege conduct outside the statute of limitations, the Court should deny additional amendments and dismiss the disputed counts with prejudice.  *See, e.g.*, *Foman v. Davis*, 371 U.S. 178, 182 (1962) (noting "failure to cure deficiencies by amendments previously allowed" and "futility of amendment" are reasons to deny further leave to amend).

## III.        CONCLUSION

Defendants respectfully request that the sole inventorship element of Counts II–XXX, and Counts XXXI–XXXIV in full, be dismissed with prejudice, and that Eaton Corporation be dismissed from this case.

Dated:  March 25, 2020

Respectfully submitted,

**PERKINS COIE LLP**

By:  */s/ Skyler M. Howton*
Skyler M. Howton
Texas Bar No. 24077907
SHowton@perkinscoie.com
500 N. Akard Street, Suite 3300
Dallas, Texas 75201
Tel. (214) 259-4951
Fax (214) 965-7752

Amy Simpson*
California Bar No. 241090
ASimpson@perkinscoie.com
11452 El Camino Real, Suite 300
San Diego, California 92130
Tel. (959) 720-57002
Fax (858) 720-5799

Terrence Wikberg*
District of Columbia Bar No. 479289
TWikberg@perkinscoie.com
700 Thirteenth Street, N.W. Suite 800
Washington, D.C. 20005
Tel. (202) 654-6201
Fax (202) 654-9149

*Admitted Pro Hac Vice*

**ATTORNEYS FOR DEFENDANTS
EATON CORPORATION AND
COOPER LIGHTING, LLC**

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a true and correct copy of the above and foregoing

document has been served on March 25, 2020, to all counsel of record who are deemed to have

consented to electronic service via the Court's CM/ECF system per Local Rule CV-5(b).

*/s/ Skyler M. Howton*
Skyler M. Howton