IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
WACO DIVISION

| | | |
|---|---|---|
| TRUSUN TECHNOLOGIES, LLC D/B/A<br>TRUSOLIS TECHNOLOGIES;<br>THE JOHNSTON FAMILY TRUST; AND<br>JOHN F. JOHNSTON,<br><br>Plaintiffs,<br><br>v.<br><br>EATON CORPORATION; AND<br>COOPER LIGHTING, LLC D/B/A<br>COOPER LIGHTING SOLUTIONS, AND<br>SIGNIFY HOLDING B.V.,<br><br>Defendants. | §<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§ | Case No. 6:19-cv-00656-ADA<br><br>JURY TRIAL DEMANDED |

**PLAINTIFFS' OPPOSITION TO DEFENDANTS' CORRECTED MOTION TO STRIKE (DKT NO. 80) AND**

**PLAINTIFFS' REQUEST FOR RELIEF INCLUDING FEES AND COSTS**

I.      **INTRODUCTION AND SUMMARY OF ARGUMENT**

The Court should deny Defendants' motion. Defendants' disingenuous attempt to mischaracterize Plaintiffs' supplemental evidentiary cites as "New Infringement Contentions" is nothing more than gamesmanship intended to deprive Plaintiffs of their ability to prove their case at trial. Plaintiffs' supplemental evidentiary cites to highly confidential source code and schematics are not a change in infringement *theory* but a voluntary good faith provision of ***evidentiary cites***, provided on Plaintiffs' proposed date for narrowing of the case, in the hopes that Defendants would reciprocate.[1] Defendants lost every term at *Markman* where Plaintiffs won every term (with a one-word exception, see *infra*), and Plaintiffs' underlying theories disclosed in their preliminary infringement contentions (PICs) therefore have not changed.

Defendants raised the issue of infringement contention sufficiency in correspondence on June 4, 2021, ***one year after receiving Plaintiffs' contentions*** and only days after Plaintiffs had requested a narrowing of Defendants' invalidity contentions, underscoring that Defendants' motion is without merit and is an act of gamesmanship. Defendants' primary argument appears to be that the specific make and model of the main processing chips ***in Defendants' own devices*** is a surprise to Defendants for purposes of seeking third party discovery. This is nonsensical, and in the circumstances here, it also is deeply ironic: For the very chip that Defendants chose as an example in their brief (Def. Mot. at 7-8), Defendants sent their supplier ▇▇▇▇▇▇ ▇▇▇▇▇▇▇▇▇ requiring that chip's programming to implement ▇▇▇▇▇▇▇▇

---

[1] The correspondence attached to the present Opposition shows that Defendants declined Plaintiffs' invitation to call the Court with Plaintiffs to seek guidance on how to present these intertwined issues. *See* Declaration of Pierre Hubert in Opposition to Defendants' Corrected Motion ("Hubert Decl.") Ex. A. Defendants counsel instead opted for a Friday filing after close of business and in excess of page limits, followed by an *ex parte* call on Monday morning without having invited Plaintiffs to that Monday call. *Id.* Ex. B.

██████████████ mode, such that Defendants' highest-selling Accused Product infringed. *See* Hubert Decl. Exs. C, D.  Defendants produced this ██████████ to Plaintiffs for the first time early *in 2021*, and its accompanying ████████████████ confirming that none of the subsequent changes were to that default design for the first time *in April 2021*.  *Id.* at ¶¶ 6, 7.  Yet Defendants' corporate representative under oath admitted that he provided such documents to Defendants' outside counsel ***"early in 2020"—i.e., likely more than one year before Defendants' counsel produced them to Plaintiffs' counsel.***  *Id.* at Ex. E.  Defendants' late production flies in the face of Defendants' representation (Def. Mot. 3-4) that they produced all key technical documents before December 2020, and Defendants' unclean hands preclude their argument.

Defendants' secondary argument is that Defendants are surprised by Plaintiffs' providing cites to schematics and materials pointing to ████████████████████████████ ████████████████.  Defendants' arguments are belied by the parties' *Markman* papers.  At *Markman*, the parties disputed the role of the metal layer under the dielectric, with Plaintiffs expressly calling the metal under the LED dielectric a "***portion of heat sink***" (consistent with Plaintiffs' contentions), and with Defendants' expressly acknowledging that Plaintiffs' construction of "heat sink" (which ultimately prevailed) "aid[ed] [Plaintiffs'] infringement arguments."  *See* Plaintiffs' Demonstrative *Markman* Slides, at 11 (Hubert Decl. Ex. F); Defendants' Responsive *Markman* Brief (Dkt. 32) at 18.  Further, Defendants once again have unclean hands, as they stonewalled Plaintiffs' request for samples of Accused Products dating back to March 1, 2021 (discussed *infra* and see Hubert Decl. Exs. G & H).  Defendants' production of these (paid-for) samples has been so slow that even as of this Opposition filing, Plaintiffs still have not received samples of half of the requested Accused Products.

Finally, Defendants can show no prejudice and have only benefitted from being informed of evidentiary source code and schematic cites **30 days before** the service of opening reports, **before** inventor deposition, **before** Defendants provided a 30(b)(6) technical witness, and **before** Defendants provided Plaintiffs with even a single physical sample.

The Court should deny Defendants' motion, grant Plaintiffs their fees and costs for having to respond to such a baseless motion in view of Defendants' unclean hands on intertwined discovery issues, and also order Defendants to reciprocate the information exchange and narrow their alleged art, per Plaintiffs' position in the April 13 and June 17, 2021 dispute charts provided to the Court, and per Plaintiffs' co-filed Proposed Order.

## II.    STATEMENT OF FACTS

On March 19, 2020, Plaintiffs served their PICs. Based on a request from Defendants to provide additional charts for additional accused products, on June 5, 2020, Plaintiffs supplemented those contentions with additional charts to remove any alleged doubt from Defendants that additional products were intended to be covered by the original infringement contentions. In their PICs, Plaintiffs produced high level photos of one representative Accused Product, the Visium, and Plaintiffs laid out their theory as to how Defendants' products meet the claim elements of the 685 Patent -- whose unpublished application Defendants' predecessor had accessed under NDA, per Plaintiff's complaint.

In July 2020, at the *Markman* hearing, the parties disputed a number of terms. The Court rejected all of Defendants' proposed constructions, and adopted all of Plaintiffs' proposed constructions except for one word ("modulate" = "control"), construing as a genus of what Plaintiff had argued could be a species (*i.e.,* pulse width modulation). In the coming months, Plaintiffs and Defendants disputed a number of issues, including the breadth of the case. Plaintiffs indicated that Defendants' alleged invalidity contentions required narrowing (as contemplated by the Court's

3

Scheduling Order) in that they purported to combine more than fifty references in countless unspecified ways. Defendants refused to narrow their alleged art unless Plaintiffs narrowed their case first.

On April 13, 2021, the parties emailed a joint chart with discovery disputes to the Court. In that chart, Plaintiffs proposed a gradual narrowing of the case, including First Reduction of Alleged Art on April 29, 2021 and a Second Reduction of Alleged Art served 30 days before opening expert reports, *i.e.* July 6, 2021.  Shortly afterwards, **on June 4, 2021, <u>one year after Plaintiffs served their June 5, 2020 infringement contentions, and almost 15 months after Plaintiffs served their original PICs, for the first time Defendants sent correspondence to Plaintiffs arguing as to the sufficiency of Plaintiffs' infringement contentions</u>** and that the product that was the focus of the original contentions was not sufficiently representative of other accused products.

On June 11, 2021, Plaintiffs wrote back to Defendants indicating that the original PICs did not require amendment or supplementation because they were sufficient to put Defendants on notice of Plaintiffs' infringement theories, as evidenced by the fact that Defendants raised no issue with them in the full year that elapsed between June 5, 2020 and June 4, 2021. In the spirit of compromise Plaintiffs offered to supplement their original contentions with exemplary evidence specific to each of the remaining Accused Products, in exchange for Defendants finally agreeing to narrow their invalidity contentions as the Scheduling Order had contemplated they would do in March and yet Defendants had refused to do (the subject of the pending discovery dispute that was first submitted to the Court on April 13, 2021 and later again on June 17, 2021).

On July 6, 2021 (30 days before opening expert reports are due to be served), which is the date by which Plaintiffs had proposed a specific reduction in Defendants' alleged prior art, in good

faith and in the hopes that it would lead Defendants to reciprocate, Plaintiffs followed through with providing Defendants with a narrowing of Plaintiffs' infringement claims and supplemental evidentiary cites.  Plaintiffs also filed a Notice to the Court (without the voluminous and highly confidential materials). Dkt. 78. A few days later, Defendants emailed Plaintiffs threatening to file a "motion to strike." Plaintiffs requested that Defendants instead consider reciprocating with a narrowing of their alleged art as Plaintiffs previously had proposed.  Hubert Decl. Ex. A.

Defendants' counsel then indicated via email that they would confer internally to decide whether they would reciprocate and narrow their prior art.  Hubert Decl. Ex. A. Plaintiffs' counsel also invited Defendants' counsel to join Plaintiffs on a call to the Court so the parties could obtain guidance as to the intertwined disputed issues including Defendants' purported issue with Plaintiffs' supplemental evidentiary cites.  *Id.*

Defendants' counsel then emailed back, however, indicating that they were not willing to reciprocate.  *Id.*  Defendants then filed an initial version of their motion to strike – after close of business on Friday July 16th, without having obtained guidance from the Court beforehand, and in excess of the District's page limits for such motions.  The following Monday morning, Defendants' counsel indicated in an email that Defendants' counsel had called the Court that morning on an *ex parte* basis.  This surprised Plaintiffs not only because it had been Plaintiffs suggestion for the parties to call the Court on the intertwined issues before any motion was filed and Defendants' counsel had refused and proceeded with their filing, but also because at no time had Defendants' counsel indicated that they intended to call the Court *ex parte*.  Hubert Decl. Ex. B.  On Monday, July 19th, Defendants filed a shorter "corrected" motion, Dkt. No. 80, in response to which Plaintiffs file this Opposition and Request for Relief.

**III.   PLAINTIFFS' EVIDENTIARY CITES TO SOURCE CODE AND SCHEMATICS DO NOT CONSTITUTE "NEW INFRINGEMENT CONTENTIONS"**

5

Plaintiffs' infringement theories have not changed. Plaintiffs won every term at the *Markman* hearing, except for one that the Court construed more broadly than Plaintiffs requested ("modulate" = "control") while still rejecting Defendants' proposal. As can be expected from a Plaintiff that has completely prevailed for all intents and purposes at *Markman*, Plaintiffs have had no reason to change their ***theories***. Plaintiffs provided highly detailed and confidential ***source code and schematic evidentiary cites*** in good faith, in response to a recent correspondence from Defendants (who waited over one year after Plaintiffs served their PICs to apparently take issue with Plaintiffs' charting of a representative product in the PICs), on the day of Plaintiffs' proposed schedule for case narrowing (*i.e.,* 30 days before opening expert reports), and in an attempt to spur reciprocity from Defendants. Plaintiffs now twice have narrowed their case, *see, e.g.,* Dkt. Nos. 58 and 61 (narrowing causes of action) and Dkt. No. 78 (narrowing claim-product assertions), with Defendants in return providing only constantly changing pretexts for refusing to reciprocate.

**A.    Defendants' argument feigning surprise at Plaintiffs' identification of the ▮▮▮ in Defendants' own devices is unavailing and should not be heard, especially as Defendants sent a ▮▮▮ resulting in infringement by their highest-selling Accused Product, but failed to produce that information in this litigation before 2021.**

Regarding Defendants' argument that Plaintiffs' PICs failed to identify by make and model all of the ▮▮▮ in certain of Defendants' own Accused Products that control power to the LEDs and help perform temperature detection and comparison under the claim language, it is plainly evident from Plaintiffs' PICs that Plaintiffs' infringement theories always have expressly relied on ▮▮▮ performing these operations. Relying on the Visium product as a representative product for the purposes of the PICs, Plaintiffs' ▮▮▮, and their PICs sufficiently disclose Plaintiffs' theories in this regard.

While Defendants' Accused Products may use slightly different ▬▬▬ ▬▬▬▬▬▬ as compared to those in the Visium photo cited in the PICs ▬▬▬ ▬▬▬▬▬▬▬▬▬ these ▬▬ are analogous in operation and Plaintiffs' theory that there are ▬▬▬▬▬▬ arranged and operating per the claim language has always been the same. Even while highly confidential materials may add details such as the schematic-level indication of make and model for the ▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬, which may differ from product to product, the underlying theory is the same. Even Defendants' technical corporate designee testified that another accused product has different ▬▬ with "analogous" roles to those in the Visium (the representative in the PICs). Hubert Decl. Ex. E.

Further, Defendants' manufactured argument of prejudice should not be heard because Defendants have unclean hands. Defendants waited until 2021 before producing what are among the most important technical documents in the case, on the highest-selling Accused Product. In 2015, **Defendants sent their** ▬▬▬▬▬▬▬▬▬▬▬ **that commissioned a** ▬▬▬▬ **design** using ▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬, creating an infringing lighting system. At the time Defendants commissioned that design, Joe Casper, who earlier had received confidential technical information from Plaintiffs under NDA (see Complaint), was at the helm of Defendants' predecessor Ephesus Lighting as its CTO. Defendants produced this key ▬▬▬▬▬▬ to Plaintiffs in this litigation for the first time early in 2021, and its accompanying ▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬ for the first time in April 2021. Disturbed by Defendants' very late production of such key documents that are at the very heart of the case, during the recent deposition of Defendants' technical corporate representative, Plaintiffs asked that witness under oath when those documents had been collected and the witness indicated that ▬▬▬▬▬▬ was

7

provided to Defendants' counsel *in early 2020 – so Defendants' counsel failed to produce them to Plaintiffs' counsel for one year or more.* Defendants' very late production of such key documents is particularly damning in view of Defendants' representation that all of their key technical documents were produced prior to a December 4, 2020 date for Final Infringement Contentions. Def. Mot. at 3-4.

    **B.    Defendants' argument feigning surprise from Plaintiffs' identification of the ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇ lso is unavailing.**

Regarding Defendants' argument that they are confused by an arrow pointing to a photo of the exterior of a product where Plaintiffs reference the ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇ the *Markman* materials show that (consistent with Plaintiffs' PICs) the parties always understood that the metal layer under the LEDs was a portion of the heat sink.

One of the terms the parties disputed at *Markman* was "heat sink upon which the LED load array is mounted." Defendants' proposed construction added terms contrary to plain meaning, and effectively required the LEDs to be *directly* mounted to the heat sink so that they would have no circuit, and be shorted out on the underlying metal and be inoperable. *See* Defendants' Responsive *Markman* Brief (Dkt. 32) at 18 ("The claims say what they say. Trusun cannot escape what it chose to define as the scope of its rights to aid its infringement arguments. The heat sink should be defined as recited in the claim, without a printed circuit board limitation."). Plaintiffs explained, however, that Defendants construction was nonsensical and would result in an inoperable product. *See* Plaintiffs' *Markman* Reply (Dkt. 37) at 2 ("When an LED has its cathode and anode directly connected to a heat sink with no circuit board to implement a circuit, then that component has its cathode and anode shorted together.") This dispute was illustrated in Plaintiffs' *Markman* demonstrative slides provided to the Court as well, including showing the "Aluminum layer" under

8

the dielectric (not electrically conductive) layer, expressly labeled as "***portion of heat sink***".  See Hubert Decl. Ex. F.

Further illustrating the disingenuous nature of Defendants' newfound "surprise" at what Plaintiffs' PICs intended to identify as the claimed heat sink, Plaintiffs' technical tutorial video stated: "As another example of a feature used by the inventor, the inventor positioned the LED array on a printed circuit board, or PCB, which is a board that contains a circuit trace to establish the circuit between components in the circuit.  The ***PCB then was connected to, and also could be within, the heat sink, thereby mounting the LEDs on the heat sink***."  Plaintiffs' technical tutorial also discussed thermal dissipation through aluminum as an example: "***The inventor used aluminum for its high thermal conductivity to dissipate heat.  The inventor used extruded aluminum, and also used an aluminum layer in additional to the circuit trace layer of the PCB***."

Defendants' Responsive *Markman* Brief (at p.18) expressly acknowledges that Plaintiffs' *Markman* position on "heat sink" was such that it "aid[ed] [Plaintiffs'] infringement arguments." Defendants can hardly claim now that they did not understand Plaintiffs' infringement theory from the PICs that the ████████████████████████████████████████████ ████████████████████████████████████████████ ████████████████████████████████████████████ ████████████████████████████████ Defendants cannot wait one year after service of the PICs without raising any complaints about PIC sufficiency and then suddenly feign surprise and purport not to understand Plaintiffs' PICs.  It is also disingenuous for Defendants to argue that they do not understand that ████████████████████████████████████████ ████████████████████████████ when that is exactly what was disclosed to Defendants' predecessor under NDA along with the unpublished application that culminated in the 685 Patent.

9

Further, Defendants again come to the Court with unclean hands. Plaintiffs' first requested Accused Products as early as March 1, 2021 and Defendants' foot-dragging on that request has resulted in Plaintiffs still not having received samples for half of the Accused Products requested (and paid for) by Plaintiffs. Hubert Decl. Ex. G. Defendants' roadblocks have included the repeated insistence that Plaintiffs fill out a lengthy "Credit Application" even though Plaintiffs had indicated they would pay in cash and did not wish to complete a false form that should not be required to obtain materials in discovery. Hubert Decl. Ex. H. Defendants only backed down after weeks of delay upon Plaintiffs indication that Plaintiffs would seek the Court's assistance.

## IV.   DEFENDANTS HAVE NOT SHOWN AND CANNOT SHOW ANY PREJUDICE

Defendants have not shown and cannot show any prejudice from being informed of supplemental evidentiary cites to source code and schematics **30 days before** the service of opening reports, **before** the upcoming inventor deposition, **before** Defendants provided a Rule 30(b)(6) technical witness, and **before** Defendants even fulfilled Plaintiffs' request for samples of Accused Products dating back to March 2021. Defendants' argument that Defendants needed Plaintiffs to tell them the precise make and model identification of ▮▮▮▮▮▮▮ *in their own products* to seek third party prior art discovery *from their own suppliers* is a transparent attempt at manufacturing prejudice where there is none, and because Plaintiffs now have learned from Defendants' recent 2021 productions that Defendants sent their ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ such that the highest-selling Accused Product infringes, Defendants' argument that they are prejudiced by the identification of the ▮▮▮ in their own products also is disingenuous.

## V.   CONCLUSION AND REQUEST

For the foregoing reasons, the Court should DENY Defendants' motion and GRANT Plaintiffs' relief including fees and costs and a compelled narrowing of Defendants' alleged art as per Plaintiffs' April 13 and June 17 dispute submissions and the co-filed Proposed Order.

10

Respectfully submitted,

July 26, 2021                                    */s/ Gilbert A. Greene*
                                                 Gilbert A. Greene
                                                    State Bar No. 24045976
                                                 J. Bradford Thompson
                                                    State Bar No. 24046968
                                                 Thomas W. Sankey
                                                    State Bar No. 17635670
                                                 Diana M. Sangalli
                                                    State Bar No. 24033926
                                                 Pierre J. Hubert
                                                    State Bar No. 24002317
                                                 W. Andrew Liddell
                                                    State Bar No. 24070145
                                                 **DUANE MORRIS LLP**
                                                 Las Cimas IV
                                                 900 S. Capital of Texas Hwy, Suite 300
                                                 Austin, TX 78746-5435
                                                 Tel: (512) 277-2300
                                                 Fax: (512) 277-2301
                                                 *BGreene@duanemorris.com*
                                                 *BThompson@duanemorris.com*
                                                 *TWSankey@duanemorris.com*
                                                 *DMsangalli@duanemorris.com*
                                                 *PJHubert@duanemorris.com*
                                                 *WALiddell@duanemorris.com*

                                                 Joshua B. Long
                                                    Texas State Bar No. 24078876
                                                 **DUANE MORRIS LLP**
                                                 1330 Post Oak Blvd, Suite 800
                                                 Houston, Texas 77056
                                                 Tel: (713) 402-3900
                                                 Fax: (713) 583-9623
                                                 *JBLong@duanemorris.com*

                                                 **ATTORNEYS FOR PLAINTIFFS TRUSUN TECHNOLOGIES, LLC; THE JOHNSTON FAMILY TRUST; AND JOHN F. JOHNSTON**

Respectfully submitted,

July 26, 2021                                    */s/ Gilbert A. Greene*
                                                 Gilbert A. Greene
                                                    State Bar No. 24045976
                                                 J. Bradford Thompson
                                                    State Bar No. 24046968
                                                 Thomas W. Sankey
                                                    State Bar No. 17635670
                                                 Diana M. Sangalli
                                                    State Bar No. 24033926
                                                 Pierre J. Hubert
                                                    State Bar No. 24002317
                                                 W. Andrew Liddell
                                                    State Bar No. 24070145
                                                 **DUANE MORRIS LLP**
                                                 Las Cimas IV
                                                 900 S. Capital of Texas Hwy, Suite 300
                                                 Austin, TX 78746-5435
                                                 Tel: (512) 277-2300
                                                 Fax: (512) 277-2301
                                                 *BGreene@duanemorris.com*
                                                 *BThompson@duanemorris.com*
                                                 *TWSankey@duanemorris.com*
                                                 *DMsangalli@duanemorris.com*
                                                 *PJHubert@duanemorris.com*
                                                 *WALiddell@duanemorris.com*

                                                 Joshua B. Long
                                                    Texas State Bar No. 24078876
                                                 **DUANE MORRIS LLP**
                                                 1330 Post Oak Blvd, Suite 800
                                                 Houston, Texas 77056
                                                 Tel: (713) 402-3900
                                                 Fax: (713) 583-9623
                                                 *JBLong@duanemorris.com*

                                                 **ATTORNEYS FOR PLAINTIFFS TRUSUN TECHNOLOGIES, LLC; THE JOHNSTON FAMILY TRUST; AND JOHN F. JOHNSTON**

## CERTIFICATE OF SERVICE

    I hereby certify that on July 26, 2021, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system, which will send notification of such filing to all counsel of record.

                                                                  */s/ Gilbert A. Greene*
                                                                   Gilbert A. Greene